342 So.2d 481 (1977)
In re Preer BEVERLY.
No. 47747.
Supreme Court of Florida.
January 27, 1977.
*483 Phillip A. Hubbart, Public Defender, and Paul Morris, Asst. Public Defender, for Preer Beverly.
Robert L. Shevin, Atty. Gen., and Margarita Esquiroz, Asst. Atty. Gen., for the State of Florida.
ADKINS, Justice.
This is a direct appeal from the Circuit Court of Dade County which held that Section 394.467, Florida Statutes (1973), was constitutional. We have jurisdiction. Article V, Section 3(b)(1), Florida Constitution.
The pertinent portions of the statute under attack read as follows:
"394.467 Involuntary hospitalization

(1) Criteria.  A person may be involuntarily hospitalized if he is mentally ill and because of his illness is:
(a) Likely to injure himself or others if allowed to remain at liberty, or
(b) In need of care or treatment and lacks sufficient capacity to make a responsible application on his own behalf.
(2) Admission to a treatment facility.  A patient may be hospitalized in a treatment facility, after notice and hearing, upon recommendation of the administrator of a receiving facility where the patient has been admitted for examination or evaluation. When a patient is not an inpatient in a receiving facility, the administrator of a designated receiving facility may make a recommendation for involuntary hospitalization of a patient who has been given an examination, evaluation, or treatment by staff of the receiving facility or a private physician. The hearing may be waived in writing by the patient. The recommendation must be supported by the opinions of two physicians who have personally examined the patient within the preceding five days that the criteria for involuntary hospitalization are met... ."
On June 20, 1975, the designee of the Administrator of the Jackson Memorial Hospital Institution filed a petition for the involuntary hospitalization of respondent. A hearing on the involuntary hospitalization *484 petition was held on June 26, 1975, and resulted in an order requiring respondent to be hospitalized involuntarily. The judge specifically upheld the constitutionality of Section 394.467(1)(b), Florida Statutes (1973).
Appellant first says that the statute is so vague that persons of ordinary intelligence must guess at its meaning, and therefore violates the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 9, Florida Constitution. Connally v. General Const. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1925); State v. Barquet, 262 So.2d 431 (Fla. 1972). Specifically, appellant says that under the statute a person who is "mentally ill" may be involuntarily hospitalized, and that this term is unconstitutionally vague. Appellant argues that the vagueness impediment is not overcome by the definition in Section 394.455(3), Florida Statutes (1973), which reads:
"`Mentally ill" means having a mental, emotional, or behavioral disorder which substantially impairs the person's mental health."
Appellant also contends that the statute is overbroad in that it authorizes the involuntary hospitalization of the non-dangerous mentally ill person with no need of a showing that the individual cannot survive safely in freedom. Appellant says that the statute does not require the trial court to explore the possible alternatives to involuntary commitment. In other words, the court may require the involuntary hospitalization without satisfying itself that nothing less onerous than commitment would best serve the patient. This is known as the "least restrictive alternative" approach. Lake v. Cameron, 124 U.S.App.D.C. 264, 364 F.2d 657 (1966); Covington v. Harris, 136 U.S.App.D.C. 35, 419 F.2d 617, 623 (1969).
Appellant relies upon Commonwealth ex rel. Finken v. Roop, 234 Pa.Super. 155, 339 A.2d 764 (1975), which held that the language of the Pennsylvania involuntary hospitalization statute was unconstitutionally vague, in that it failed to give fair warning of the conduct proscribed by law and there was an absence of standard restricting the discretion of governmental authorities or courts in enforcing the law.
The Pennsylvania statute allowed a petition for commitment to be filed when "a person is believed to be mentally disabled and in need of care or treatment of such mental disability." The Pennsylvania statute defined "mentally disabled" as:
"[A]ny mental illness, mental impairment, mental retardation, or mental deficiency, which so lessens the capacity of a person to use his customary self-control, judgment and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under care as provided in this act." 339 A.2d 764 at 775.
In holding that the definition was unconstitutionally vague, the Court said:
"Mental illness has been attacked as a criterion for commitment because it is usually defined in terms of deviation from the `norm' and thus is dependent upon what the examining psychiatrist believes the `norm' to be. If, however, the term `mental illness" is given sufficient legal meaning so as not to be unconstitutionally vague, ... the difference of opinion among psychiatrists as to what constitutes the `norm' becomes much less important. Thus, if the statute has only a vague standard, the trier of fact must rely almost totally on the expert opinions....
"The commitment procedure ... has asked too much of psychiatrists. The psychiatrist is not merely asked to report his diagnosis and evaluation to the court, he is asked to draw legal conclusions  is the subject mentally ill and does he need confinement? These conclusions have severe legal consequences and should be answered by the judicial system. That can be accomplished by requiring a strict burden of proof, and by defining `mental illness' in a manner which prevents the court from exercising unfettered discretion (i.e., blindly relying on the conclusion drawn by the examining psychiatrist) and which indicates the type of *485 conduct for which commitment is an appropriate sanction. If the standards are sufficiently precise, confinement will be less dependent upon the examining psychiatrist's personal conception of normal social behavior.
"The narrow issue presented by appellant's vagueness argument, therefore, is whether the requirement that the subject's mental illness render him `in need of care' is sufficient to withstand a constitutional attack of impermissible vagueness. Clearly it is not. `In need of care' is so broad as to be virtually meaningless. Furthermore, once a finding of mental illness is made, it would be impossible not to find that the individual is in need of care." 339 A.2d 764 at 777-78.
It is elementary that statutes may properly authorize the involuntary commitment of the mentally ill when the term "mentally ill" is given a satisfactory legal meaning. Section 394.467(1), Florida Statutes, quoted above, imparts a sufficient legal meaning to the term "mental illness" by setting criteria. Under the statute the pertinent inquiry is whether the person is mentally ill and because of his illness is (1) likely to injure himself or others if allowed to remain at liberty, or (2) is in need of care or treatment and lacks sufficient capacity to make a reasonable application on his own behalf. These statutory standards are more precise than those discussed in Commonwealth ex rel. Finken v. Roop, supra, as the Florida statutory language is adequate to warn that a person is subject to involuntary hospitalization only if he or she is likely to harm himself or others, or if he or she requires treatment and does not have the capacity to decide for himself. The appellant's vagueness challenge to the statute is without merit.
The statutory authority for the judge to involuntarily hospitalize if the person lacks "sufficient capacity to make a responsible application on his own behalf" is grounded on the parens patriae power which is vested in the states. Hawaii v. Standard Oil Co., 405 U.S. 251, 257, 92 S.Ct. 885, 31 L.Ed.2d 184 (1971). The parens patriae doctrine is used as a basis for state laws which protect the interests of minors, establish guardianships and provide for the involuntary commitment of the mentally ill. See In re W., 29 Cal. App.3d 623, 105 Cal. Rptr. 736 (1972). Recent decisions have recognized the propriety of using the parens patriae power for involuntary commitment to include those who are incapable of making their own treatment decisions. As stated in Lynch v. Baxley, 386 F. Supp. 378 (M.D.Ala. 1974),
"Commitment on account of dangerousness to others serves the police power, while commitment for dangerousness to self partakes of the parens patriae notion that the state is the ultimate guardian of those of its citizens who are incapable of caring for their own interests. (Citations omitted). Valid exercise of the parens patriae power presumes an incapability to manage one's affairs that approximates, if it is not identical with, legal incompetence to act. Consequently, in order to deprive a person alleged to be a danger to himself alone of the right to choose between treatment and liberty, the state must first demonstrate that, because of his mental illness, he lacks the capacity to weigh for himself the risks of freedom and the benefits of hospitalization.
"A finding of dangerousness indicates the likelihood that the person to be committed will inflict serious harm on himself or on others. In the case of dangerousness to others, this threat of harm comprehends the positive infliction of injury  ordinarily physical injury, but possibly emotional injury as well. In the case of dangerousness to self, both the threat of physical injury and discernible physical neglect may warrant a finding of dangerousness. Although he does not threaten actual violence to himself, a person may be properly commitable under the dangerousness standard if it can be shown that he is mentally ill, that his mental illness manifests itself in neglect or refusal to care for himself, that such neglect or refusal poses a real and present threat of substantial harm to his *486 well-being, and that he is incompetent to determine for himself whether treatment for his mental illness would be desirable." At 390-91.
Standards analogous to those in Section 394.467, Florida Statutes, have been expressly sanctioned by federal and state courts and upheld when attacked on the ground of vagueness. Bell v. Wayne County General Hospital at Eloise, 384 F. Supp. 1085 (E.D.Mich. 1974); In re Williams, 297 So.2d 458 (La.3d Cir.Ct.App. 1974). Cf. Humphrey v. Cady, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); Lynch v. Baxley, supra; Fhagen v. Miller, 29 N.Y.2d 348, 328 N.Y.S.2d 393, 278 N.E.2d 615 (1972). For example, in referring to a section of the code similar to the Florida statute, the Louisiana court (In re Williams, supra), said:
"That section provides, in effect, that a person may be committed who is found to be `suffering from a mental illness which causes him to be dangerous to himself or others and/or incapable of caring for himself or his personal safety.' We think that provision is clear and definite enough to apprise the person affected of the nature and degree of proof required to support the judgment demanded, and that it satisfies the constitutional guaranty of due process of law. We thus reject the argument that Section 53 is void because it is vague and indefinite." 297 So.2d 458 at 461.
Appellant relies upon O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), to claim that the statute is overbroad because, according to O'Connor, mental illness, without more, is not a legal basis for the involuntary hospitalization of the mentally ill. In O'Connor, the court did not decide the issue of whether, when, or under what procedures a state may confine a mentally ill person. The court did hold that a state cannot constitutionally confine without more a non-dangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members and friends. Section 394.453, Florida Statutes (1973), provides that involuntary hospitalization is to be ordered only when it is determined to be necessary. If there were those capable of surviving safely in freedom either through their own efforts or with the aid of family or friends, hospitalization would not be necessary. The concurring opinion by Chief Justice Burger in O'Connor, supra, furnishes support to the validity of Florida standards, wherein the Chief Justice said:
"Analysis of the sources of the civil commitment power likewise lends no support to that motion. There can be little doubt that in the exercise of its police power a State may confine individuals solely to protect society from the dangers of significant antisocial acts or communicable disease. Cf. Minnesota ex rel. Pearson v. Probate Court of Ramsey County, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744; Jacobson v. Massachusetts, 197 U.S. 11, 25-29, 25 S.Ct. 358, 360-362, 49 L.Ed. 643 (1905). Additionally, the States are vested with the historic parens patriae power, including the duty to protect `persons under legal disabilities to act for themselves.' Hawaii v. Standard Oil Co., 405 U.S. 251, 257, 92 S.Ct. 885, 888, 31 L.Ed.2d 184 (1972). See also Mormon Church v. United States, 136 U.S. 1, 56-58, 10 S.Ct. 792, 807-808, 34 L.Ed. 481 (1890). The classic example of this role is when a State undertakes to act as `"the general guardian of all infants, idiots, and lunatics."' Hawaii v. Standard Oil Co., supra, quoting 3 W. Blackstone, Commentaries * 47." 422 U.S. 563 at 582, 95 S.Ct. 2486 at 2497, 45 L.Ed.2d 396.
"[A] particular scheme for protection of the mentally ill must rest upon a legislative determination that it is compatible with the best interests of the affected class and that its members are unable to act for themselves. Cf. Mormon Church v. United States, supra." 422 U.S. 563 at 583, 95 S.Ct. 2486 at 2498, 45 L.Ed.2d 396 (concurring opinion).
Section 394.467, Florida Statutes (1973), has withstood the attack of vagueness and overbreadth. We hold the statute to be constitutional on its face.
*487 Before entering an order requiring the involuntary hospitalization of a person, the judge must first conclude that the person is mentally ill. The judge must then conclude that, because of the illness the person is likely to injure himself or others if allowed to remain at liberty. In order to conclude that the person is likely to injure himself or others, the judge must conclude that there is such a threat of harm as to comprehend the positive infliction of injury. Ordinarily, this would refer to physical injury, but the judge may very well conclude that the person is likely to inflict emotional injury to another. The statute contemplates the latter as well as the former.
If the person is non-dangerous, the judge must conclude that he is in need of care and treatment and lacks sufficient capacity to make a responsible application on his own behalf. A mere conclusion that the person is "in need of care or treatment" is insufficient. The judge must further conclude that such person "lacks sufficient capacity to act for himself."
If the judge concludes that the mental illness manifests itself in neglect or refusal to care for himself, that such neglect or refusal poses a real and present threat of substantial harm to his well being, and that he is incompetent to determine for himself whether treatment for his mental illness would be desirable, then the criteria of the statute have been met.
However, even though the other criteria are met, a non-dangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends should never be hospitalized involuntarily.
The trial court denied appellant's motion to apply the standard of proof beyond a reasonable doubt. Instead, the court used the standard of clear and convincing evidence. Appellant says this was error.
Section 394.467(3)(a), Florida Statutes, merely provides that if "the court concludes that the patient meets the criteria for involuntary hospitalization, the judge shall order the patient to be transferred to a treatment facility." The statute is silent regarding the burden of proof required.
Appellant relies upon In re Ballay, 157 U.S.App.D.C. 59, 482 F.2d 648 (1973), which held that the "reasonable doubt" burden of proof was necessary. Lessard v. Schmidt, 349 F. Supp. 1078 (E.D.Wis. 1972); Denton v. Commonwealth, 383 S.W.2d 681 (Ky. 1964); In re Andrews, 334 N.E.2d 15 (Mass.Sup. Jud.Ct. 1975); U.S. ex rel. Stachulak v. Coughlin, 520 F.2d 931 (7th Cir.1975).
The vast majority of courts have adopted the standard of proof by clear and convincing evidence and a few courts have adopted proof by a preponderance of the evidence. Lynch v. Baxley, supra; Bartley v. Kremens, 402 F. Supp. 1039 (E.D.Pa. 1975); Dower v. Director, Patuxent, 396 F. Supp. 1070 (D.Md. 1975); Tippett v. Maryland, 436 F.2d 1153 (4th Cir.1971); Dixon v. Attorney General, 325 F. Supp. 966 (M.D.Pa. 1971); United States v. Brown, 155 U.S.App.D.C. 402, 478 F.2d 606 (1973); In re Ward, 533 P.2d 896 (Utah 1975); State ex rel. Hawks v. Lazaro, 202 S.E.2d 109 (W.Va.S.Ct. of App. 1974); People v. Sansone, 18 Ill. App.3d 315, 309 N.E.2d 733 (1974); People v. Ralls, 23 Ill. App.3d 96, 318 N.E.2d 703 (1974); People v. Bradley, 22 Ill. App.3d 1076, 318 N.E.2d 267 (1974); In re Sciara, 21 Ill. App.3d 889, 316 N.E.2d 153 (1974); Cf. Sas v. Maryland, 334 F.2d 506 (4th Cir.1964); Bush v. Director, Patuxent Institution, 22 Md. App. 353, 324 A.2d 162 (1974); State ex rel. Walker v. Jenkins, 203 S.E.2d 353 (W.Va.S.Ct. of App. 1974); Commonwealth ex rel. Finken v. Roop, 234 Pa.Super. 155, 339 A.2d 764 (1965); State v. Valdez, 88 N.M. 338, 540 P.2d 818 (1975). In Valdez, supra, the court in discussing the New Mexico statute said:
"Nowhere is there mention of exactly what standard of proof must be met by the State in order to justify commitment. Since there has also been no previous New Mexico case law on this particular point, the courts have been without guidance. Undoubtedly, patients have been committed on the basis of a mere preponderance of the evidence, the typical standard for civil actions. This court is of the *488 opinion that this standard is definitely constitutionally unacceptable for civil commitment hearings, in view of the fact that fundamental liberties of the patient are so often at stake.
"Decisions in federal court and other state courts have been divided, though probably the majority have adopted the stricter reasonable doubt standard. See In re Ballay, 157 U.S.App.D.C. 59, 482 F.2d 648 (1973); Lessard v. Schmidt, 349 F. Supp. 1078 (E.D.Wis. 1972); In re Pickles' Petition, 170 So.2d 603 (Fla.App. 1965). For several reasons this court declines to accept this viewpoint, and instead adopts the standard of `clear and convincing' evidence as the better rule." 540 P.2d 818 at 822.
We agree with the New Mexico court and hold that the standard of proof to be applied in civil commitment proceeding is "clear and convincing evidence," which shall be applied in this and all future civil commitment proceeding. This standard of proof was defined and described in Allstate Insurance Co. v. Vanater, 297 So.2d 293 (Fla. 1974).
The District Court of Appeal, First District, reversed an adjudication of incompetency in the case of In Re Pickles' Petition, supra. There the court pointed out that extreme care should be exercised in adjudicating one to be incompetent and held that a diagnosis of schizophrenia standing by itself, not classified as to type, was insufficient to support an adjudication of incompetency. In its opinion the court said:
"A person under restraint of his liberty is entitled to liberation where reasonable doubt exists as to his mental condition. An adjudication of incompetency is a partial deprivation of it... ." 170 So.2d 603 at 614.
Insofar as the case of In Re Pickles' Petition, supra, may be construed to be in conflict with the views expressed herein, we overrule In Re Pickles' Petition, supra.
The United States Supreme Court has yet to consider the standard of proof for involuntary hospitalization necessary to satisfy federal due process requirement. In Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the court refused to impose on the states the lesser federal standard of proving an insanity defense. An Oregon statute requiring the accused to prove his insanity defense beyond a reasonable doubt was upheld even though it was materially different and more stringent than the standard set by the United States Supreme Court. This matter was left to determination by the individual states.
Leland, supra, is of little value as a precedent in a civil commitment case. However, it does bolster our reasoning that the states may determine the standard of proof without violating due process requirements.
While both civil commitment proceedings and criminal proceedings may result in confinement, a person involuntarily committed for mental illness is entitled to treatment, to review of his condition and to release when he is no longer in need of treatment. There is a differentiation between persons in need of mental treatment and persons who violated the criminal laws. The difficulty in proving an individual state of mind combined with a stringent reasonable doubt standard, may work a hardship on the individual who has a right to treatment and to society which has a right to protection.
Appellant contends that he was denied his rights under the United States Constitution Fifth Amendment in that he was not given the warnings required in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Miranda applies only to "in custody" interrogation by law enforcement officers and bars the admissibility of any statement obtained in violation of its mandate at a subsequent criminal prosecution. The Fifth Amendment privilege is not designed to protect any disclosures which are made by a mental patient during a psychiatric examination and which will lead only to an assessment of his mental or emotional condition. The privilege has no application in commitment proceedings so long as the proceedings do *489 not entangle him in any criminal prosecution. Dower v. Director, Patuxent, supra; In Re O'Neill, 536 P.2d 552, 554 (Or. App. 1975); Sas v. Maryland, supra.
The exclusion, at any subsequent criminal prosecution, of any admissions, information or evidence divulged by the person being examined, would suffice to protect his constitutional rights.
Appellant also contends that he was denied his right to counsel, saying that the patient has the right to counsel at the interview with the examining psychiatrist. The subject of an involuntary civil commitment proceeding has the right to the effective assistance of counsel at all significant stages of the commitment process. Lynch v. Baxley, 386 F. Supp. 378 (M.D.Ala. 1974). By significant stages we mean all judicial proceedings and any other official proceeding at which a decision is, or can be, made which may result in a detrimental change to the conditions of the subject's liberty. The right to counsel does not extend to preliminary stages, such as psychiatric interview where custodial decisions are not made. The presence of counsel at that stage would unduly interfere with the objective evaluation of the patient's mental condition by the examining physician. Lynch v. Baxley, supra. We hold that a patient does not have a right to counsel at the psychiatric interview, as no such right is applicable at the psychiatric examination stage. We point out that appellant was adequately represented by court-appointed counsel at the hearing.
For the first time on appeal, appellant claims that the patient-psychiatrist statutory privilege set forth in Section 90.242, Florida Statutes (1973), was violated when the psychiatrist testified concerning the conversations with the appellant during the psychiatric examination. This Court should decline the review of questions which the trial court did not have a full and adequate opportunity to consider. Silver v. State, 188 So.2d 300 (Fla. 1966); Reinhard v. Bliss, 85 So.2d 131 (Fla. 1956). Although counsel for appellant objected to the testimony of the psychiatrist, the objection was made on the ground that appellant had not been sufficiently advised of his right to an attorney. There was no objection raising the question of privilege under the statute.
The State, nevertheless, submits that an exception was created by subsection (3)(a), which reads as follows:
"There shall be no privilege for any relevant communications under this section:
"If a judge finds that the patient, after having been informed that the communications would not be privileged, has made communications to a psychiatrist in the course of a psychiatric examination ordered by the court, provided that such communications shall be admissible only on issues involving the patient's mental condition." Section 90.242(3)(a), Florida Statutes (1973).
Prior to the examination appellant was advised that anything be said at that time could be used against him at the subsequent hearing. Section 394.467(3)(a), Florida Statutes (1973), provides that in proceedings for involuntary hospitalization one of the physicians who executed the hospitalization certificate shall be a witness at the hearing on hospitalization. The Legislature contemplated that when proceedings turned upon the diagnosis and treatment of attending physicians for psychiatry, the testimony of the examining physician as to communications on the crucial issue of the physical and mental condition of the patient should not be barred as being privileged.
We now turn to the question of whether the evidence was sufficient under the standards set forth above to sustain the order of involuntary hospitalization.
The seriousness of the deprivation of liberty and the consequences which follow in adjudication of mental illness make imperative strict adherence to the rules of evidence generally applicable to other proceedings in which an individual's liberty is in jeopardy. The court is required to strike a proper balance between the State interest in civilly committed persons who pose a *490 danger to society or themselves and the individual's interest in remaining free from unwanted restraint.
The petitioner in the trial court and the examining psychiatrist were seeking an order for the involuntary hospitalization of appellant for up to six months in spite of the fact that the examining physician stated that appellant would be ready to leave the hospital in one month. A psychiatrist testified that appellant was likely to injure himself or others and that he was in need of care but unable to make a responsible application on his own behalf. Another psychiatrist did not reach either of these conclusions. There was some testimony that appellant had been violent on two occasions preceding his hospitalization and had quit a job because of his religious beliefs. Appellant's half-sister testified that appellant approached her on the day prior to his hospitalization and told her that Sandy (appellant's own nickname) had died and gone to heaven and that he [appellant] was God. A psychiatrist testified that appellant truly believed he was God, Jesus Christ, and a fisherman of souls as powerful as God. Appellant testified and explained that he did not believe he was Jesus Christ in flesh but that he was a minister working through Jesus Christ. Appellant believed that he had the power of Jesus Christ.
The record of the trial court does not eliminate the possibility of successful treatment through some less restrictive alternative, as requested by appellant himself. Although the evidence is sufficient to show that appellant is mentally ill, the evidence is not clear and convincing that appellant would likely injure himself or others if allowed to remain at liberty. Appellant is mentally ill and in need of care or treatment, but it does not appear by clear and convincing evidence that he is dangerous or that he lacks sufficient capacity to make a responsible application on his own behalf.
Other points raised by appellant are without merit.
The order of the trial judge upholding the constitutionality of the statute is affirmed, but the order for involuntary hospitalization of appellant is reversed.
It is so ordered.
OVERTON, C.J., and BOYD, ENGLAND, SUNDBERG, HATCHETT and ROBERTS (Retired), JJ., concur.