382 So.2d 756 (1980)
Billy Lee KINNER, Appellant,
v.
STATE of Florida, Appellee.
No. 78-2118.
District Court of Appeal of Florida, Second District.
April 2, 1980.
Jack O. Johnson, Public Defender, and P. Douglas Brinkmeyer, Asst. Public Defender, Bartow, for appellant.
*757 Jim Smith, Atty. Gen., Tallahassee, and Eula Tuttle Mason, Asst. Atty. Gen., Tampa, for appellee.
George L. Waas, Asst. Gen. Counsel of the Florida Department of Health & Rehabilitative Services, Tallahassee, amicus curiae.
Jon P. Rossman, Executive Director, Governor's Commission on Advocacy for Persons with Developmental Disabilities, Tallahassee, and Albert J. Hadeed, Southern Legal Counsel, Inc., Gainesville, amicus curiae.
BOARDMAN, Acting Chief Judge.
Billy Lee Kinner appeals an order of the circuit court involuntarily committing him for hospitalization pursuant to Section 393.11, Florida Statutes (1977). Appellant challenges the constitutionality of Section 393.11 for the first time on this appeal.[1] We agree that Section 393.11 is unconstitutional and reverse.
Generally, unless an error is raised at the trial level it cannot be considered on appeal. The exception to this rule is where the error raised is fundamental error. Sanford v. Rubin, 237 So.2d 134 (Fla. 1970). Fundamental error has been defined as error "which goes to the foundation of the case or goes to the merits of the cause of action." Id. at 137; Clark v. State, 336 So.2d 468 (Fla.2d DCA 1976), aff'd, 363 So.2d 331 (Fla. 1978). Appellant challenges the constitutionality of Section 393.11 on the ground that it does not provide standards for involuntary hospitalization of a mentally retarded person which comport with due process. Such a defect would clearly go to the foundation of the case. Consequently, we may consider the issue on this appeal.
The pertinent portions of the challenged statute are as follows:
393.11 Hearing and order for involuntary admission to residential services; recommendation of examining commission. 
.....
(2) ... The hearing and order for involuntary admission shall be conducted and entered in the county in which the person is residing or in the county from which the original admittance was made. The hearing shall be conducted and the order entered according to the following procedure:
(a) Three persons, one of whom shall be a physician licensed and practicing under chapter 458, shall constitute a petition committee. These persons shall state under oath the name of the person being considered for involuntary admission, his residence, his family conditions, his physical condition, and the nature and extent of his retardation as established by competent evaluation.
(b) Upon receiving the petition, the court shall immediately appoint an examining commission to examine the person being considered for involuntary admission to residential services of the retardation program of the department. The court shall appoint no fewer than three disinterested experts qualified in the field of mental retardation, including at least one licensed and qualified physician, one licensed and qualified psychologist, and one qualified social worker, to examine the applicant and to testify in person at the hearing on admission to residential care. Members of the commission shall not be employees of the department or be associated with each other in practice or in employer-employee relationships. If there is not a practicing psychologist within the county who meets the above standards, the judge may appoint one additional physician to be a member of the examining commission. Such expert testimony shall include, but not be limited to:

1. The degree of the applicant's retardation.
2. The purpose to be served by residential care.

*758 3. The appropriate habilitation and treatment.

Other evidence regarding the appropriateness of the applicant's admission may be introduced at the hearing by any interested party.
(c) Hearing on the petition shall be held as soon as practicable after the petition is filed. The applicant shall be physically present throughout the entire proceeding, be represented by counsel, and be provided the right and opportunity to be confronted with, and to cross-examine, all witnesses alleging the appropriateness of his admission to residential care. All evidence shall be presented according to the usual rules of evidence. All stages of each proceeding shall be stenographically reported. The burden of proof shall be on the party alleging the appropriateness of the applicant's admission to residential care. The burden of proof shall be by clear and convincing evidence. In all cases, the court shall issue findings to support its decision and state the basis for such findings.
.....
(e) If the examining commission finds the examined person to be retarded or developmentally disabled and in need of treatment and rehabilitation within residential services of the retardation program of the department, these findings shall be reported to the court. The department shall then inform the court of all available services for the person. The court may order the involuntary admission of the person to residential services of the department. If the evidence presented to the court is not sufficient to warrant involuntary admission to residential services, but the court feels that residential services would be beneficial, the court may recommend that the person seek voluntary admission. The order of involuntary admission to residential care shall be accompanied by the report of the examining commission; shall explicitly document the degree of retardation, the purpose to be served by residential care, and the least restrictive placement for the person; and shall include copies of any other records that may be required by the department. Upon receiving the order and records, the department shall, within 45 days, provide the court with a copy of the person's habilitation plan outlining treatment and rehabilitative programs and documenting that the person has been placed in the most appropriate, least restrictive, and most cost-beneficial residential facility. (Emphasis added.)
On November 14, 1975, appellant was charged by information with lewd assault upon a child. He was found incompetent to stand trial and was committed to the Division of Mental Health. A hearing examiner authorized continued hospitalization at the Florida State Hospital in Chattahoochee. By letter dated January 24, 1977, the state hospital recommended that appellant be found not guilty by reason of insanity. Appellant was so adjudicated by written judgment filed February 11, 1977.
By a petition dated August 2, 1977, the hospital staff instituted involuntary hospitalization proceedings against appellant under Sections 394.451-.4781, Florida Statutes (1977), the Baker Act. Subsequent to filing the petition, the hospital placed appellant on voluntary status; therefore, the petition was denied.
By petition filed on March 9, 1978, the state hospital sought appellant's involuntary admission to residential services under Chapter 393, Florida Statutes (1977), the Retardation Prevention & Community Services Act. Appellant was discharged from the Florida State Hospital on April 20, 1978.
The trial court appointed an examining commission of local experts, pursuant to Section 393.11, by order filed September 21, 1978. A hearing was subsequently held, at the conclusion of which appellant was committed to the Department of Health and Rehabilitative Services (HRS) for treatment at a residential retardation facility.
Appellant contends that Section 393.11 is unconstitutional on its face because it does not provide specific criteria which must be met before a mentally retarded person can be involuntarily hospitalized. The statute *759 does set forth criteria for the examining commission to utilize in recommending involuntary hospitalization: "If the examining commission finds the examined person to be retarded or developmentally disabled and in need of treatment and rehabilitation within residential services of the retardation program of the department, these findings shall be reported to the court." Section 393.11(2)(e). However, the statute goes on to authorize the court, after having received the report of the committee, to "order the involuntary admission of the person to residential services... ." Id. At best we can assume only that the trial court is to utilize the criteria to be considered by the examining commission.
Appellant relies on In re Beverly, 342 So.2d 481 (Fla. 1977), wherein the Florida Supreme Court found that Section 394.467, authorizing commitment of mentally ill persons, provided proper due process safeguards. In Beverly, the court found Section 394.467, Florida Statutes (1973) constitutional because subsection (1) defines specific criteria for involuntary hospitalization: "(a) Likely to injure himself or others if allowed to remain at liberty, or (b) In need of care or treatment and lacks sufficient capacity to make a responsible application on his own behalf."[2]
The attack upon the constitutionality of Section 394.467 in Beverly was based upon the holding in Commonwealth ex rel. Finken v. Roop, 234 Pa.Super. 155, 339 A.2d 764 (1975), that Pennsylvania's involuntary commitment statute was unconstitutional. The Pennsylvania statute provided that a mentally disabled person should be involuntarily committed "[i]f... it is determined that such person is in need of care ... ." Id. at 768 n. 5. In holding this statute unconstitutional, the court noted: "`In need of care' is so broad as to be virtually meaningless." Id. at 778. In Beverly the Florida Supreme Court quoted with approval this statement made by the Supreme Court of Pennsylvania.
The court in Beverly stated that the statutory standards in Section 394.467(1) are more precise than those discussed in Commonwealth ex rel. Finken v. Roop, supra, and that the language adequately specifies what conditions will subject a person to involuntary commitment. The Beverly court explained.
The statutory authority for the judge to involuntarily hospitalize if the person lacks "sufficient capacity to make a responsible application on his own behalf" is grounded on the parens patriae power which is vested in the states. Hawaii v. Standard Oil Co., 405 U.S. 251, 257, 92 S.Ct. 885, 888, 31 L.Ed.2d 184 (1971).
Id. at 485. The court also quoted Lynch v. Baxley, 386 F. Supp. 378 (M.D.Ala. 1974): "Commitment on account of dangerousness to others serves the police power ..." Id. at 485. The court held that Section 394.467 is constitutional because it is a valid exercise of the state's parens patriae power and police power and the language of the statute itself limits involuntary commitment to those persons over whom the state may properly exercise these powers, i.e., those who are mentally ill and who lack "sufficient capacity to make a responsible application" on their own behalf or are likely to injure themselves or others.
Civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection. Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. *760 1845, 32 L.Ed.2d 435 (1972). Commitment of retarded persons is in many respects analogous to commitment of mentally ill individuals, and we think the mentally retarded are as deserving of due process protection as the mentally ill. Section 393.11 does not contain any standards providing due process protection. Even assuming the language "in need of treatment and rehabilitation," was intended to be the criterion for involuntary hospitalization in Section 393.11, this language is almost identical to the language "[i]n need of care" found inadequate to provide protection in Beverly.
Substantive due process requires that state action must be reasonably related to a legitimate state interest, and if a fundamental right is involved, then a state may not act only if it is necessary to promote a compelling state interest. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Since the right to liberty is a fundamental right, the state must show a compelling interest before it may involuntarily commit a person under either its parens patriae power or its police power.
Since the state interest in acting as parens patriae is premised on the need for the state to act to protect the well-being of its citizens when they cannot care for themselves, the imposition of involuntary commitment would seem necessary to vindicate that interest only when an individual is incapable of making his own evaluation of his need for psychiatric treatment.
Developments in the Law  Civil Commitment of the Mentally Ill, 87 Harv.L.Rev. 1190, 1213 (1974). The interest of the state in involuntarily committing a person for hospitalization should be balanced against the interests of the individual. In Beverly, the court cited with approval Lynch v. Baxley, supra, at 390:
Consequently, in order to deprive a person alleged to be a danger to himself alone of the right to choose between treatment and liberty, the state must first demonstrate that, because of his mental illness, he lacks the capacity to weigh for himself the risks of freedom and the benefits of hospitalization.
In re Beverly, supra, at 485.
The state's police power is a plenary power to make laws and regulations for the protection of the public health, safety, welfare, and morals. Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905). The police power focuses on the interests of society rather than the interests of the individual. The police power must be exercised to promote public interests that require such interference, and the means utilized must be reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. Goldblatt v. Town of Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). The protection of the public from dangerous persons is a compelling interest which would justify use of the police power by the state.[3]
Section 393.11 in its present form is not a proper exercise of either the state's parens patriae power or its police power because, as we have indicated, the statute includes no criteria limiting persons who may be involuntarily committed to those who lack the capacity to weigh for themselves the risks of freedom and the benefits of hospitalization and/or to those who are dangerous to themselves or others.
Consequently, we hold that Section 393.11, Florida Statutes (1977) is unconstitutional. Commitment under this statute deprives an individual of his right to substantive due process. Thus, the trial court's commitment order must be reversed. This opinion is not, however, to be construed as precluding the state or any other proper party from seeking commitment of appellant under Chapter 394, Florida Statutes (1979).[4]
*761 Accordingly, the trial court's order of commitment is REVERSED.
OTT and DANAHY, JJ., concur.
NOTES
[1] Amicus curiae briefs were filed by the Department of Health and Rehabilitative Services and the Governor's Commission on Advocacy for Persons with Developmental Difficulties, which greatly helped to clarify the issues involved here.
[2] Section 394.467 has subsequently been amended. Section 394.467(1), Florida Statutes (1979) provides:

(1) CRITERIA. 
(a) A person who is acquitted of criminal charges because of a finding of not guilty by reason of insanity may be involuntarily hospitalized pursuant to such finding if he is mentally ill and, because of his illness, is manifestly dangerous to himself or others pursuant to s. 394.901.
(b) Any other person may be involuntarily placed if he is mentally ill and, because of his illness, is:
1. Likely to injure himself or others if allowed to remain at liberty, or
2. In need of care or treatment which, if not provided, may result in neglect or refusal to care for himself, and such neglect or refusal poses a real and present threat of substantial harm to his well being.
[3] "Dangerous to others" encompasses the threat of emotional as well as physical injury. In re Beverly, 342 So.2d 481 (Fla. 1977).
[4] Such action may, indeed, be appropriate in view of findings by the psychiatrist and psychologist who examined appellant that appellant could constitute a danger to others.