398 So.2d 1360 (1981)
STATE of Florida, Appellant,
v.
Billy Lee KINNER, Appellee.
No. 59167.
Supreme Court of Florida.
May 21, 1981.
*1361 Jim Smith, Atty. Gen., and Eula Tuttle Mason, Asst. Atty. Gen., Tampa, for appellant.
Jack O. Johnson, Public Defender, and P. Douglas Brinkmeyer, Asst. Public Defender, Bartow, for appellee.
Jonathan P. Rossman, Executive Director, Governor's Commission on Advocacy for Persons with Developmental Disabilities, Tallahassee, and Albert J. Hadeed, Southern Legal Counsel, Inc., Gainesville, amicus curiae.
ADKINS, Justice.
This case is here for mandatory review of the decision of the Second District Court of Appeal in the case of Kinner v. State, 382 So.2d 756 (Fla. 2d DCA 1980). The district court found section 393.11, Florida Statutes (1977), unconstitutional. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
On November 14, 1975, appellee was charged with the lewd assault of a child. He was found incompetent to stand trial and was committed to the Division of Mental Health of the Department of Health and Rehabilitative Services. Appellee was adjudicated not guilty by reason of insanity on February 11, 1977. At the commitment hearing, Dr. Coffer, a psychiatrist, testified that appellee's condition had not changed since he had last examined appellee, which was after the lewd assault charge. Coffer further testified that appellee was severely mentally retarded and could not control his impulses. A clinical psychologist, Gerald Mussenden, perceived a serious personality disorder in appellee. Mussenden also said appellee was functioning as a retarded individual. Mussenden recommended an inpatient treatment facility. A social worker, Roger Wallace, recommended outpatient treatment. Wallace felt that appellee was functionally retarded, but that with proper treatment he might develop skills sufficient to minimally support himself.
By petition dated August 2, 1977, the hospital staff instituted involuntary hospitalization proceedings against appellee under the Baker Act, sections 394.451  394.4781, Florida Statutes (1977). Subsequent to filing the petition the hospital placed appellee on voluntary status, so the petition was denied.
By petition filed on March 9, 1978, the staff of the state hospital sought appellee's involuntary admission to residential services under the Retardation Prevention and Community Services Act. Appellee was discharged from the Florida State Hospital on April 20, 1978.
On September 21, 1978, the trial court appointed an examining commission of local experts pursuant to section 393.11. A hearing followed at which appellee was committed to the Department of Health and Rehabilitative Services for treatment at a residential retardation facility. Appellee appealed under chapter 393, and for the first time challenged the constitutionality of section *1362 393.11. The Second District Court of Appeal based jurisdiction on fundamental error, and found section 393.11 unconstitutional for failure to provide criteria restricting involuntary commitment to those unable to weigh the risks of freedom and benefits of hospitalization, and to those dangerous to themselves and dangerous to others.
Before we reach the two questions presented for review we must determine whether the matter is moot, and whether it should be decided in view of the amendment of section 393.11 by chapter 80-174, section 3, Laws of Florida, and in view of Mr. Kinner's release from confinement. It is well established that this Court will not determine a controversy where issues have become moot, unless the questions presented are of general public interest and importance, or unless such judgment as this Court might enter would affect the rights of parties. DeHoff v. Imeson, 153 Fla. 553, 15 So.2d 258 (1943); Sarasota County v. Town of Longboat Key, 343 So.2d 39 (Fla. 1977). We feel that this case raises a question of great public importance, the resolution of which will affect a significant number of retarded citizens who are presently institutionalized as a result of the application of the predecessor statute.
We now turn to the two issues presented by this appeal: 1) Whether the district court erred by finding section 393.11 unconstitutional because of insufficient standards restricting involuntary commitment, and 2) Whether appellee's commitment under section 393.11 was supported by the evidence.
As to the first issue, appellant says that section 393.11[1] must be read in conjunction *1363 with the definitional portion of the statute, specifically section 393.063(22), Florida Statutes (1977).[2] When read together, appellant argues, the sections provide the requisite standards and safeguards with respect to involuntary commitment. We agree. In the case of In Re Beverly, 342 So.2d 481 (Fla. 1977), we upheld the constitutionality of section 394.467(1)(a), Florida Statutes (1977). That statute provided, inter alia, that person may be involuntarily hospitalized if he is mentally ill and, because of his illness, is likely to injure himself or others if allowed to remain at liberty. We also held in Beverly that statutes may properly authorize the involuntary commitment of the mentally ill when the term "mentally ill" is given a satisfactory legal meaning. Under the statute at issue in Beverly, the pertinent inquiry was "whether the person is mentally ill and because of his illness, is 1) likely to injure himself or others if allowed to remain at liberty, or 2) is in need of care or treatment and lacks sufficient capacity to make a reasonable application on his own behalf." 342 So.2d at 485. We find similar safeguards present in the statute under attack.
In addition, we are aware of the strong presumption in favor of the constitutionality of statutes. It is well established that all doubt will be resolved in favor of the constitutionality of a statute, Bonvento v. Board of Public Instruction of Palm Beach County, 194 So.2d 605 (Fla. 1967), and that an act will not be declared unconstitutional unless it is determined to be invalid beyond a reasonable doubt. Knight and Wall Co. v. Bryant, 178 So.2d 5 (Fla. 1965), cert. denied 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966).
In light of the similarity of the criteria provided in chapters 393 and 394 and in light of the strong presumption of constitutionality of statutes, we hold that the statute is constitutional.
Mr. Kinner's release makes the second issue, whether the evidence supported his confinement, moot. We, therefore, need not make a decision as to the findings of fact by the trial court.
The decision of the district court as to the constitutionality of the statute is reversed.
It is so ordered.
BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
ENGLAND, J., dissents with an opinion with which SUNDBERG, C.J., concurs.
ENGLAND, Justice, dissenting.
I disagree completely with the majority's pronouncement that sections 393.11 and 393.063(22), when read together, provide minimally-required standards and safeguards for an involuntary commitment of the mentally retarded.
*1364 The state argues that these provisions "implicitly" require a finding of dangerousness to the committed individual or to others. I simply cannot find that implied safeguard in either section 393.063(22), which defines retardation in terms of intelligence and adaptive behavior, or in section 393.11, which requires involuntary commitment to residential services and thereby, allegedly, indicates an inability to function "at large".
I would affirm the careful decision of the district court.
SUNDBERG, C.J., concurs.
NOTES
[1] § 393.11, Fla. Stat. (1977), provides in pertinent part:

393.11 Hearing and order for involuntary admission to residential services; recommendation of examining commission. 
(2) The hearing and order for involuntary admission shall be conducted and entered in the county in which the person is residing or in the county from which the original admittance was made. The hearing shall be conducted and the order entered according to the following procedure:
(a) Three persons, one of whom shall be a physician licensed and practicing under chapter 458, shall constitute a petition committee. These persons shall state under oath the name of the person being considered for involuntary admission, his residence, his family conditions, his physical condition, and the nature and extent of his retardation as established by competent evaluation.
(b) Upon receiving the petition, the court shall immediately appoint an examining commission to examine the person being considered for involuntary admission to residential services of the retardation program of the department. The court shall appoint no fewer than three disinterested experts qualified in the field of mental retardation, including at least one licensed and qualified physician, one licensed and qualified psychologist, and one qualified social worker, to examine the applicant and to testify in person at the hearing on admission to residential care. Members of the commission shall not be employees of the department or be associated with each other in practice or in employer-employee relationships. If there is not a practicing psychologist within the county who meets the above standards, the judge may appoint one additional physician to be a member of the examining commission. Such expert testimony shall include, but not be limited to:
1. The degree of the applicant's retardation.
2. The purpose to be served by residential care.
3. The appropriate habilitation and treatment.
Other evidence regarding the appropriateness of the applicant's admission may be introduced at the hearing by any interested party.
(c) Hearing on the petition shall be held as soon as practicable after the petition is filed. The applicant shall be physically present throughout the entire proceeding, be represented by counsel, and be provided the right and opportunity to be confronted with, and to cross-examine, all witnesses alleging the appropriateness of his admission to residential care. All evidence shall be presented according to the usual rules of evidence. All stages of each proceeding shall be stenographically reported. The burden of proof shall be on the party alleging the appropriateness of the applicant's admission to residential care. The burden of proof shall be by clear and convincing evidence. In all cases, the court shall issue findings to support its decision and [state] the bases for such findings.
.....
(e) If the examining commission finds the examined person to be retarded or developmentally disabled and in need of treatment and rehabilitation within residential services of the retardation program of the department, these findings shall be reported to the court. The department shall then inform the court of all available services for the person. The court may [order the involuntary admission of] the person to residential services of the department. If the evidence presented to the court is not sufficient to warrant involuntary admission to residential services, but the court feels that residential services would be beneficial, the court may recommend that the person seek voluntary admission. The order of involuntary admission to residential care shall be accompanied by the report of the examining commission; shall explicitly document the degree of retardation, the purpose to be served by residential care, and the least restrictive placement for the person; and shall include copies of any other records that may be required by the department. Upon receiving the order and records, the department shall, within 45 days, provide the court with a copy of the person's habilitation plan outlining treatment and rehabilitative programs and documenting that the person has been placed in the most appropriate, least restrictive, and most cost-beneficial residential facility. (Footnotes omitted.)
[2] § 393.063(22), Fla. Stat. (1977), provides:

"Retardation" means significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the period from conception to age 18. "Significantly subaverage general intellectual functioning," for the purpose of this definition, means performance which is two or more standard deviations from the mean score on a standardized intelligence test specified in the rules of the department. "Adaptive behavior," for the purpose of this definition, means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected of his age, cultural group, and community.