49 So.3d 263 (2010)
Samantha BURTON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D09-1958.
District Court of Appeal of Florida, First District.
August 12, 2010.
*264 David H. Abrams, Tallahassee, for Appellant.
Bill McCollum, Attorney General, and Lisa Raleigh, Special Counsel, Office of the Attorney General, Tallahassee, for Appellee.
Randall C. Marshall and Maria Kayanan, American Civil Liberties Union of Florida, Miami, and Diana Kasdan, American Civil Liberties Union Foundation, New York, N.Y., amici curiae.
CLARK, J.
This is an appeal of a circuit court order compelling a pregnant woman to submit to any medical treatment deemed necessary by the attending obstetrician, including detention in the hospital for enforcement of bed rest, administration of intra-venous medications, and anticipated surgical delivery of the fetus. The action was initiated in the circuit court by the State Attorney under the procedure described in In re Dubreuil, 629 So.2d 819 (Fla.1994). As provided in Dubreuil, after the State Attorney received notification from a health care provider that a patient refused medical treatment, the State Attorney exercised his discretion to determine that a sufficient state interest was at stake to justify legal action.
This appeal is moot with regard to Appellant because, as ordered, she submitted to the hospital confinement, medical treatment and surgical delivery. Two days after entry of the order, Appellant's deceased fetus was delivered by Cesarean section. Thus, the justiciable controversy between these parties has expired. However, mootness does not preclude appellate jurisdiction if the issue is "capable of repetition yet evading review," as in the case of medical issues which require immediate resolution. See Roe v. Wade, 410 U.S. 113, *265 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Matter of Dubreuil, 629 So.2d 819 (Fla.1993); Holly v. Auld, 450 So.2d 217, n. 1 (Fla. 1984); Philip Padovano, Florida Appellate Practice, § 1.4, p. 9 (2007-8 ed.).
The situation presented to the trial court in this case is capable of repetition yet evading review. Florida case precedent has addressed the right to privacy where a patient seeks to discontinue life-sustaining medical treatment, refuse a life-saving medical procedure, and as applied to statutory regulation of a minor's decision whether or not to continue her pregnancy. In re Guardianship of Browning, 568 So.2d 4 (Fla.1990); In re Dubreuil, 629 So.2d 819 (Fla.1994); In re T.W., 551 So.2d 1186 (Fla.1989). However, case precedent governing the use of a Dubreuil proceeding to compel a pregnant woman to undergo medical confinement, treatment and procedures against her wishes for the benefit of her unborn fetus is not found in Florida's jurisprudence. In an effort to assist trial courts and counsel involved in these expedited, if not emergency proceedings, we exercise our discretionary authority to address this appeal. See In re T.A.C.P., 609 So.2d 588 (Fla.1992); Harrell v. St. Mary's Hospital, 678 So.2d 455 (Fla. 4th DCA 1996).
The trial court found that the appellant had failed to follow the doctor's instructions and recommendations, rendering her pregnancy "high-risk," and found a "substantial and unacceptable" risk of severe injury or death to the unborn child if the appellant continued to fail to follow the recommended course of treatment. The trial court stated the rule that "as between parent and child, the ultimate welfare of the child is the controlling factor," and concluded that the State's interests in the matter "override Ms. Burton's privacy interests at this time." The court ordered Samantha Burton to comply with the physician's orders "including, but not limited to" bed rest, medication to postpone labor and prevent or treat infection, and eventual performance of a cesarean section delivery.
The law in Florida is clear: Every person has the right "to be let alone and free from government intrusion into the person's private life." Art. I, sec. 23, Fla. Const. This fundamental right to privacy encompasses a person's "right to the sole control of his or her person" and the "right to determine what shall be done with his own body." In re Guardianship of Browning, 568 So.2d 4, 10 (Fla.1990). The Florida Supreme Court has specifically recognized that "a competent person has the constitutional right to choose or refuse medical treatment, and that right extends to all relevant decisions concerning one's health." Browning, 568 So.2d at 11.
A patient's fundamental constitutional right to refuse medical intervention "can only be overcome if the state has a compelling state interest great enough to override this constitutional right." Singletary v. Costello, 665 So.2d 1099, 1105 (Fla. 4th DCA 1996). Thus, the threshold issue in this situation is whether the state established a compelling state interest sufficient to trigger the court's consideration and balance of that interest against the appellant's right to refuse to submit to the medical intervention the obstetrician prescribed. The state's interest in the potentiality of life of an unborn fetus becomes compelling "at the point in time when the fetus becomes viable," defined as "the time at which the fetus becomes capable of meaningful life outside the womb, albeit with artificial aid." Roe v. Wade, 410 U.S. 113, 163, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); In re T.W., 551 So.2d 1186, 1193 (Fla.1989). The Legislature has defined "viability" as "that stage of fetal development when the life of the unborn child may *266 with a reasonable degree of medical probability be continued indefinitely outside the womb." § 390.0111(4), Fla. Stat. No presumption of viability is provided in the statute.
Because there is no statutory or precedential presumption of viability, in terms of the stage of pregnancy or otherwise, there must be some evidence of viability via testimony or otherwise. Only after the threshold determination of viability has been made may the court weigh the state's compelling interest to preserve the life of the fetus against the patient's fundamental constitutional right to refuse medical treatment.
Even if the State had made the threshold showing of viability and the court had made the requisite determination, the legal test recited in the order on appeal was a misapplication of the law. The holding in M.N. v. Southern Baptist Hosp. of Florida, 648 So.2d 769 (Fla. 1st DCA 1994), "that as between parent and child, the ultimate welfare of the child is the controlling factor," does not apply to this case. Unlike this case, in M.N., the parents refused consent for a blood transfusion and chemotherapy for their 8-month-old infant. No privacy rights of a pregnant woman were involved.
The test to overcome a woman's right to refuse medical intervention in her pregnancy is whether the state's compelling state interest is sufficient to override the pregnant woman's constitutional right to the control of her person, including her right to refuse medical treatment. Dubreuil, 629 So.2d 819; Browning, 568 So.2d 4; Public Health Trust of Dade County v. Wons, 541 So.2d 96 (Fla.1989). In addition, where the state does establish a compelling state interest and the court has found the state's interest sufficient to override a pregnant patient's right to determine her course of medical treatment, the state must then show that the method for pursuing that compelling state interest is "narrowly tailored in the least intrusive manner possible to safeguard the rights of the individual." Browning, 568 So.2d at 14.
REVERSED.
VAN NORTWICK, J., Concurs with Written Opinion, and BERGER, WENDY, Associate Judge, Dissents with Written Opinion.
VAN NORTWICK, J., concurring.
I concur completely with Judge Clark's opinion. I write because, given the deprivation of her physical liberty and violation of her privacy interests, the proceeding below violated Samantha Burton's constitutional right to appointed counsel in this case. Accordingly, I would reverse on these constitutional grounds as well.
The constitutional right to appointed counsel in criminal proceedings is well-established under the Sixth Amendment.[1]Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In civil proceedings, however, there is no corollary to the Sixth Amendment right to counsel. The Supreme Court has held that, under the Due Process Clause, "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." Lassiter v. Department of Social Services, 452 U.S. 18, 26-27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). For example, in In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Court held that the Due Process Clause of *267 the Fourteenth Amendment requires appointment of counsel to represent a child in state civil delinquency proceedings "which may result in commitment to an institution in which the juvenile's freedom is curtailed." Id. at 36, 87 S.Ct. 1428.
In the context of a case involving the termination of parental rights, the Court in Lassiter examined the limited nature of the right to counsel in civil proceedings. There, the Court applied the case-by-case due process analysis established in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to the question of whether indigent parents are entitled to counsel in proceedings to terminate their parental rights. Lassiter, 452 U.S. at 27, 101 S.Ct. 2153 (citing Eldridge, 424 U.S. at 339, 96 S.Ct. 893). As the Lassiter court explained, courts must first evaluate the three Eldridge elements: "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." Id. Courts then "must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." Id.
The Florida Supreme Court has recognized the right to appointed counsel in certain civil proceedings under Florida's Due Process Clause. See Art. I § 9, Fla. Const. Thus, "[t]he subject of an involuntary civil commitment proceeding has the right to the effective assistance of counsel at all significant stages of the commitment process." In Re Beverly, 342 So.2d 481, 489 (Fla.1977); see also Pullen v. State, 802 So.2d 1113, 1116 (Fla.2001). Similarly, there is a right to appointed counsel in proceedings which can result in the permanent loss of parental custody. In Interest of D.B., 385 So.2d 83, 90-91 (Fla.1980).
An individual who faces involuntary hospitalization and mandated invasive medical treatment under the procedure established in In Re Dubreuil, 629 So.2d 819 (Fla. 1994), has serious liberty and privacy interests at stake. Here, Ms. Burton was involuntarily admitted to the hospital and, ultimately, required to undergo a caesarian section against her will. She suffered a significant deprivation of her physical liberty and personal freedom at least the equivalent of the interests at stake in D.B. and Beverly. Although in the order under review the trial court directed the special assistant state attorney appointed for this proceeding to contact North Florida Legal Services, Inc., to request that office to provide Ms. Burton representation, no counsel appeared on her behalf until after the caesarian section was performed. Appointment of counsel after the fact does not satisfy the due process requirements under the Federal and Florida Constitutions. Here, the State had the time to appoint a special assistant state attorney to institute this proceeding. I see no reason why there was not also the opportunity to appoint counsel for Ms. Burton prior to the hearing.
BERGER, W., Associate Judge, dissenting.
I agree with the majority that the trial judge applied the wrong legal standard. If this case were not moot, I would reverse and remand for consideration using the correct, compelling state interest standard. However, because I disagree with the majority view that this is a case capable of repetition yet evading review, I would dismiss the appeal as moot. Accordingly, I dissent.
This court was not presented with a case of first impression warranting an opinion to assist trial courts and counsel in similar future expedited cases. It matters *268 not that the case before us involves a hospital's desire to compel medical treatment over the objection of a pregnant woman. See Pemberton v. Tallahassee Mem'l Reg'l Med. Ctr., Inc., 66 F.Supp.2d 1247 (N.D.Fla.1999) (State's interest in preserving the life of the unborn child outweighed the pregnant mother's constitutional right to refuse medical treatment.). The law to be followed is clear and unambiguous. The proper test to be applied when a trial court is presented with a request to override a competent adult's constitutional right to refuse medical treatment was decided in In re Guardianship of Browning, 568 So.2d 4 (Fla. 1990) (State has a duty to assure that a person's wishes regarding medical treatment are respected unless the State has a compelling interest great enough to override this constitutional right.). The proper procedure to be followed when a healthcare provider wishes to override a patient's decision to refuse medical treatment was outlined in In re Matter of Dubreuil, 629 So.2d 819 (Fla.1994) (Healthcare provider must immediately provide notice to both the state attorney, who is responsible for deciding whether to engage in legal action, and to interested third parties known to the provider.). Additionally, it is well settled that the State's interest in preserving the life of an unborn child becomes compelling upon viability. Roe v. Wade, 410 U.S. 113, 163, 93 S.Ct. 705 (1973); In re T.W., 551 So.2d 1186, 1194 (Fla.1989) (Viability under Florida law occurs at that point in time when the fetus becomes capable of meaningful life outside the womb through standard medical measures. Under current standards, this point generally occurs upon completion of the second trimester.). Here the trial judge followed the correct procedure but applied the wrong legal standard. Instead of determining whether the State had a compelling interest in overriding the appellant's right to refuse medical treatment, the judge determined forced treatment was in the best interest of the child.
The trial court specifically found that the risk of severe injury or death to the unborn child was substantial and unacceptable and that the interests of the State in this matter overrode appellant's privacy interests.[2] While I believe the balancing of interests employed by the trial judge would have been appropriate under Browning,[3] it was the trial court's application of the State's parens patriae authority to override the appellant's right to refuse medical treatment for an existing child that was in error. However, since the principles of law to be applied in this case *269 are not new and the case is now moot, I would dismiss the appeal.
NOTES
[1] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right... to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI.
[2] Due to the lack of an adequate record, we must presume there was sufficient evidence to support the trial judge's decision, e.g., that viability was determined. See J.P. Morgan Chase Bank v. Combee, 883 So.2d 330 (Fla. 1st DCA 2004) (Inadequacy of record on appeal required District Court of Appeal to presume that sufficient evidence supported trial court's dismissal of bank's complaint ... the trial court's decision could well be supported by evidence adduced at trial or hearing but not stated in the judge's order or otherwise apparent in the incomplete record on appeal.); See also Hill v. Hill, 778 So.2d 967 (Fla.2001), quoting Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla. 1979) (When there are issues of fact the appellant necessarily asks the reviewing court to draw conclusions about the evidence. Without a record of the trial proceedings, the appellate court cannot properly resolve the underlying factual issues so as to conclude that the trial court's judgment is not supported by the evidence or by an alternative theory.)
[3] A finding of viability must be made before the trial court may engage in a balancing test. It is undisputed that appellant was in the 25th week, or third trimester, of pregnancy. Although this fact alone is not dispositive, it supports a finding of viability, even though not specifically stated in the judge's order.