OVERTON, Justice,
dissenting.
I dissent. The real issue in this case is whether the legislature properly allowed Alachua County to implement its local ordinance regulating underground petroleum storage tanks with regulations more stringent and extensive than existing state rules. By adopting the decision of the First District Court of Appeal, the majority effectively denies the legislature the power to grant to counties the authority to have more stringent regulation of underground petroleum tanks without reenacting the entire statewide regulation on this subject or enacting a special act. The present act grants Broward and Dade Counties the authority to have more stringent regulation of underground petroleum tanks. However, this Court’s decision tells the legislature that it cannot grant to Alachua County that same authority. For the reasons explained below, I find the decision of the majority is legally flawed and not justified under these circumstances.
The following are the relevant facts and legislative history concerning this dispute. In 1987, Alachua County adopted an ordinance relating to the storage of petroleum products in underground tanks. It filed the ordinance with the Secretary of State on June 24, 1987, and it submitted the ordinance to the Department of Environmental Regulation (DER) for approval in accordance with section 376.317(8), Florida Statutes (1987). On July 7, 1987, the DER issued its intent to approve the ordinance. Thereafter, the Florida Petroleum Marketers Association, Inc., (FPMA) and others filed petitions for a formal administrative hearing on the ordinance’s approval, pursuant to section 120.57, Florida Statutes (1987). In the spring of 1988, prior to the administrative hearing, the legislature, by chapter 88-331, Laws of Florida, amended section 376.317, Florida Statutes (1987), which regulated how a county could adopt standards for underground storage tanks in instances where those standards are more stringent than the state rules. Chapter 88-331, in section 6, provides that, prior to seeking DER approval for a more stringent ordinance, a county must effectively administer the state law or rule for a period of two years. The chapter makes an exception, however, for those counties which were already grandfathered by the statute (Dade and Broward) and those which had begun the DER approval process prior to January 1, 1988. The latter exemption includes the petition filed by Alachua County.[1]
In addition, the 1988 legislature adopted chapter 88-156, Laws of Florida, which contains the statutory provision in issue in this proceeding. Chapter 88-156 concerns primarily the licensing of construction contractors under the provisions of chapter 489, Florida Statutes (1987). Section 16 of the act creates section 489.133, Florida Statutes, relating to “pollutant storage systems specialty contractors,” with definitions, rules, and operating standards for such contractors. Section 489.133(l)(b), Florida Statutes (1989), contains the following definition:
“Pollutant storage tank” means a tank, together with associated piping or dispensing facilities, which is or could be used for the storage or supply of pollutants as defined in s. 376.301 and which *242 is required to be registered under chapter 17-61 of the Florida Administrative Code or for which notification must be submitted under Subtitle I of the Resource Conservation and Recovery Act.
(Emphasis added.)
Section 17 of chapter 88-156 gives new powers and duties to the DER by adding a new subsection (3) to section 376.303, Florida Statutes (1987). The pertinent portion of the new subsection reads as follows:
(3)(a) The department may inspect the installation of any pollutant storage tank. Any person installing a pollutant storage tank, as defined in s. 489.133, shall certify that such installation is in accordance with the standards adopted pursuant to this section. The department shall promulgate a form for such certification which shall at a minimum include:
1. A signed statement by the certified pollutant storage systems specialty contractor, as defined in s. 489.133, that such installation is in accordance with standards adopted pursuant to this section; and
2. Signed statements by the onsite persons performing or supervising the installation of a pollutant storage tank, which statements shall be required of tasks that are necessary for the proper installation of such tank.
(b)l. The department shall, to the greatest extent possible, contract with local governments to provide for the administration of its responsibilities under this subsection. Such contracts may allow for administration outside the jurisdictional boundaries of a local government. However, no such contract shall be entered into unless the local government is deemed capable of carrying out such responsibilities to the satisfaction of the department.
2. To this end, the department shall inform local governments as to the provisions of this section and as to their options hereunder. At its option, any local government may apply to the department for such purpose on forms to be provided by the department and shall supply such information as the department may require.
(c) The department may enjoin the installation or use of any pollutant storage tank that has been or is being installed in violation of this section or of s. 489.133.
§ 376.303(3), Fla.Stat. (1989) (emphasis added).
Section 18 of chapter 88-156, which the district court found to be a special law, also amends chapter 376, Florida Statutes (1987), and reads, in pertinent part, as follows: [2]
Section 18. Subsection (3) of section 376.317, Florida Statutes, is amended to read:
376.317 Superseded laws; state preemption.—
(3) A county government is authorized to adopt countywide ordinances that regulate underground storage tanks, as described herein, which ordinances are more stringent. or extensive than any state law or rule regulating such tanks, provided:
(a) The original ordinance was legally adopted by the county and filed with the Secretary of State before July 1, 1987 and in force before September 1, 1984;
or
(b) The ordinance establishing the local program was approved by the department.
Before the enactment of this amendment, section 376.317(3)(a) applied only to Dade and Broward Counties. As amended, the section also applies to Alachua County and allows it to enforce its ordinance, which is more stringent and more extensive than the DER rules governing the installation or use of pollutant storage tanks.
The FPMA and others challenged the constitutionality of section 18 of chapter 88-156, Laws of Florida, asserting that: (1) section 18 is a special law and violates the provisions of article III, sections 10 and 11(b), of the Florida Constitution; and (2) section 18 embraces a subject different from the rest of chapter 88-156, thus vio *243 lating article III, section 6, of the Florida Constitution. The trial court found that section 18 violates article III, sections 6 and 10, of the Florida Constitution. The district court of appeal affirmed, holding, “The trial court correctly found that Section 18 of Chapter 88-156 is a local law, notice of which was not published in accordance with the general law and is therefore in violation of Article III, Section 10.” Alachua County, 553 So.2d at 329. The district court also found that section 18 “violates the single subject requirement of Article III, Section 6 of the Florida Constitution.” Id. It explained its holding by stating:
In this ease the pending bill containing some 16 sections amending Chapter 489, relating to the regulation of the construction industry, was amended by adding Section 18 to amend Chapter 376, relating to pollutant discharge prevention and removal, a subject totally distinct and different from the subject matter of the act before the amendment. The provisions of Section 18 are not germane to the construction industry, the subject of the pending act it amended, nor are its provisions such as are necessary incidents to, or which tend to make effective or promote, the objects and purposes of the pending construction industry legislation.
Id. I disagree.

Claim that Section 18 is a Special Law

The district court held that this act was unconstitutional because it affected only Alachua County and that there was no possibility it would ever affect or apply to any other county. The fact that the exception provisions contained in section 376.317, Florida Statutes (1989), can never apply to any counties but Broward, Dade, and Ala-chua is not determinative. In 1988, the legislature amended section 376.317, Florida Statutes (1987), in two separate enactments — chapters 88-156 and 88-331, Laws of Florida. Taken together, these changes provide three categories of counties with respect to the adoption of local underground storage tank ordinances: (1) those which had adopted ordinances and filed them with the Secretary of State prior to July 1, 1987; (2) those which had sought DER approval prior to January 1, 1988; and (3) those which would begin the approval process after January 1, 1988. I find that this staggered application of the statute is rational and clearly rests “on some reasonable relation to the subject matter in respect of which the classification is proposed.” Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879, 881 (Fla.1983) (citation omitted).
The legislature recognized the preexisting efforts of counties to regulate underground storage tanks and that counties were at different levels in the process of adopting ordinances for this purpose. I find it significant that section 18 of chapter 88-156 actually broadened an existing class. While the FPMA admits that Ala-chua County can be grandfathered under the provisions of chapter 88-331, which exempts the county from additional review criteria, the FPMA claims that the county cannot be grandfathered under the provisions of section 18 of chapter 88-156 because the two grandfather provisions are not of the same degree. I find no merit to that argument. Further, I emphasize that “if any state of facts can reasonably be conceived that will sustain the classification attempted by the Legislature, the existence of that state of facts at the time the law was enacted will be presumed by the courts.” Lewis v. Mathis, 345 So.2d 1066, 1068 (Fla.1977). In light of Alachua County’s prior adoption of the ordinance and its proceeding under the applicable regulations for approval by the DER, I find that the classification created by section 18 of chapter 88-156 is rational and reasonable.

Claim of “Single Subject” Violation

The district court, in holding section 18 of chapter 88-156 unconstitutional, reasoned that pollutant discharge prevention and removal was a subject totally distinct and different from the subject matter of the act, which it characterized as “containing some 16 sections amending Chapter 489, relating to the regulation of the construction industry.” Alachua County, 553 *244 So.2d at 329. The legal principles by which the single subject requirement of article III, section 6, of the Florida Constitution is applied have been firmly established by the case law of this Court. First, the subject of an act “may be as broad as the Legislature chooses as long as the matters included in the act have a natural or logical connection.” Board of Pub. Instruction v. Doran, 224 So.2d 693, 699 (Fla.1969). This court has explained that “[t]he purpose of the constitutional prohibition against a plurality of subjects in a single legislative act is to prevent a single enactment from becoming a ‘cloak’ for dissimilar legislation having no necessary or appropriate connection with the subject matter.” State v. Lee, 356 So.2d 276, 282 (Fla.1978). This Court has also held that a broad and comprehensive legislative enactment is not fatal as long as the matters included have a natural or logical connection. See Smith v. Department of Ins., 507 So.2d 1080 (Fla.1987).
In applying these principles, we have held that the Florida Pharmacy Act, covering the practice of pharmacy and regulation of drug stores, is not unconstitutional since these matters are properly connected, State ex rel. Flink v. Canova, 94 So.2d 181 (Fla.1957); that a statute is proper that mandates open meetings for boards and commissions and also contains provisions for criminal penalties and civil injunctive relief, Doran; that a statute is proper that provides for the decriminalization of traffic infractions and also creates a criminal penalty for willful refusal to sign a traffic citation, State v. McDonald, 357 So.2d 405 (Fla.1978); that, given the effect of tort litigation on all phases of the automobile insurance industry, tort law and automobile insurance could properly be included in one act, State v. Lee, 356 So.2d 276 (Fla.1978); and that an act which covered a broad range of statutory provisions dealing with medical malpractice and insurance is proper since tort litigation and insurance reform have a natural or logical connection, Chenoweth v. Kemp, 396 So.2d 1122 (Fla.1981). Similarly, we have found that the Tort Reform and Insurance Act of 1986 is not violative of the single subject provision of the Florida Constitution, Smith v. Department of Insurance, and that legislation is proper that established a tax on services and included an allocation scheme for the use of the tax revenues. In re Advisory Opinion to the Governor, 509 So.2d 292 (Fla.1987). Finally, this Court has found that an act which deals with (1) comprehensive criminal regulations, (2) money laundering, and (3) safe neighborhoods is valid since each of these areas bears a logical relationship to the single subject of controlling crime. Burch v. State, 558 So.2d 1 (Fla.1990).
On the other hand, in Bunnell v. State, 453 So.2d 808 (Fla.1984), we found no cogent relationship between the provisions of chapter 82-150, Laws of Florida, which would have (1) made it a crime to obstruct justice by giving false information and (2) reduced the membership of the Florida Criminal Justice Council. We concluded that the act violated the single subject requirement.
In the instant case, the majority, by adopting the district court’s decision, has chosen to totally ignore the fact that chapter 489 and chapter 376 have sections other than the section at issue in this proceeding that are interrelated. I find that the provisions of chapter 88-156, Laws of Florida, amending chapter 489, Florida Statutes (1987), and the provisions amending chapter 376, Florida Statutes (1987), have a logical connection and that the legislation on its face shows that it is not “a ‘cloak’ for dissimilar legislation having no necessary or appropriate connection with the subject matter.” Lee, 356 So.2d at 282. The relationship is clear. Three sections of chapter 88-156 have provisions relating to both chapter 489 and chapter 376, Florida Statutes. First, section 16 of chapter 88-156 creates section 489.133, Florida Statutes, entitled “Pollutant storage systems specialty contractors; definitions; certification; restrictions.” Section 489.133(l)(b), Florida Statutes (1989), expressly refers to a pollutant storage tank “as defined in s. 376.301.” Second, section 17 of chapter 88-156 adds a new subsection (3) to section 376.303, Florida Statutes (1987). Section *245 376.303(3)(a), Florida Statutes (1989), reads, in part: “Any person installing a pollutant storage tank, as defined in s. 489.133, shall certify that such installation is in accordance with the standards adopted pursuant to this section.” Section 376.303(3)(c) also provides that “[t]he department may enjoin the installation or use of any pollutant storage tank that has been or is being installed in violation of this section or of s. 489.133.” Third, section 376.317, Florida Statutes (1987), which is amended by section 18 of chapter 88-156, the section in issue, allows certain governmental entities to have more stringent regulations for these pollutant storage tanks. There is clearly a logical connection between chapters 489 and 376, Florida Statutes (1989), since each chapter refers to the other chapter in its respective sections.
The majority has also chosen to ignore our statement in State v. Kinner, 398 So.2d 1360, 1363 (Fla.1981), that
we are aware of the strong presumption in favor of the constitutionality of statutes. It is well established that all doubt will be resolved in favor of the constitutionality of a statute and that an act will not be declared unconstitutional unless it is determined to be invalid beyond a reasonable doubt.
Given the direct relationship between the two statutes amended by chapter 88-156, Laws of Florida, and in light of the strong presumption of constitutionality of statutes, I find that the single subject provision has clearly not been violated.
For the reasons expressed, I would reverse the decision of the First District Court of Appeal.
SHAW, C.J., concurs.

. Section 6 of chapter 88-331, Laws of Florida, reads, in part, as follows:
Section 6. Subsection (3) of section 376.-317, Florida Statutes, is amended to read:
376.317 Superseded laws; state preemption.—
(3) A county government is authorized to adopt countywide ordinances that regulate underground storage tanks, as described herein, which ordinances are the same as or more stringent or extensive than any state law or rule regulating such tanks, provided:
(a) The original ordinance was legally adopted and in force before September 1, 1984; or
(b) The ordinance establishing a more stringent or extensive the local program is was approved by the department pursuant to subsection (4) after the county demonstrates to the department that it has effectively administered the state law or rules for a period of 2 years prior to filing a petition for approval. However, any county which has sought approval of a local tank program from the department prior to January 1, 1988, shall not be required to demonstrate that it has effectively administered the state program for any minimum period.
(Words stricken are deletions; words underlined are additions.)

. Words stricken are deletions; words underlined are additions.