495 So.2d 850 (1986)
Carol SCHEXNAYDER, Appellant,
v.
STATE of Florida, Appellee.
No. BO-84.
District Court of Appeal of Florida, First District.
October 7, 1986.
Louis O. Frost, Jr., Public Defender, James T. Miller, Asst. Public Defender, Jacksonville, for appellant.
Jim Smith, Atty. Gen., J. Craig Myrick, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
This is an appeal from an order placing appellant involuntarily in a mental institution for treatment under the Baker Act, section 394.451, et seq., Florida Statutes (1985). We reverse and vacate the order of commitment.[1]
On June 4, 1986, the administrator of Baptist Medical Center, Jacksonville, Florida, *851 filed a petition for involuntary commitment of appellant. After a hearing, the trial court entered its order requiring appellant's involuntary commitment in Northeast Florida State Hospital.
Appellant is an adult woman, a widow, who lives alone in her own apartment. All members of her family live out-of-state. She suffers from a mental disorder which is treated primarily with medication. Periodically, she forgets to take her medication, without which she becomes disoriented, nervous, and agitated, and ultimately in need of hospitalization. In the past, appellant has self-admitted herself when her condition would deteriorate to the point where hospitalization was required. The last self-admission was to the Baptist Medical Center on May 14, 1986. It was during this admission that the present petition for involuntary admission was filed.
Dr. Guerra, appellant's primary psychiatrist since 1979, testified at the hearing as to appellant's mental illness, the necessity for medication, and the mental and physical consequences to appellant of not taking the medication. He stated that without the medication appellant would become disoriented and at times would forget to eat and to take care of herself. He also testified that alternative treatment programs, such as care in a halfway house and supervision through a day-care program, had been ineffective.
Dr. Louis Legum, the court-appointed clinical psychologist, testified that on June 16, 1986, he conducted a psychological examination of appellant, reviewed her medical chart, and talked to the nursing staff at Baptist Medical Center. His examination revealed that at the time of her last self-admission there was no evidence of dehydration or gross malnutrition. He also found that appellant was not psychotic and had surprising insight into her mental illness and need for medication. It was his opinion that appellant was a non-dangerous individual, even though she had trouble controlling her moods and behavior. He concluded that appellant would be able to function adequately if she would take her medication.
Section 394.467, Florida Statutes (1985), sets forth criteria for involuntarily confining a mentally ill person for treatment. The court must find that (a) the person is mentally ill; (2) because of his mental illness, he refused placement or is unable to determine whether placement is necessary; (3) he is manifestly incapable of surviving alone or with the help of others, and without treatment he is likely to suffer from neglect or refuse to care for himself to such a degree that there is a real or present threat of substantial harm to his well-being, or, in the alternative, there is a substantial likelihood that he will seriously harm himself or others as evidenced by his recent conduct consisting of threats, attempts, or harmful acts; and (4) all relevant and available less restrictive treatment alternatives are inappropriate.
The standard of proof in state involuntary commitment proceedings is clear and convincing. In re Beverly, 342 So.2d 481 (Fla. 1977); Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).
As to the first criterion, appellant concedes that she has a mental illness.
With respect to the second criterion, however, appellant contends that she has not refused to be placed for treatment as evidenced by the fact that she admitted herself to Baptist Medical Center where she desires to remain for treatment. Except for the fact that it was the administrator of Baptist Medical Center who filed the petition for involuntary placement, there is no evidence in the record indicating appellant's inability to afford treatment in this private facility by means of insurance or some other type of benefits. Thus, the evidence is not clear and convincing that appellant has either refused placement or is unable to make that determination.
The third criterion relates to the mentally ill person's ability to survive on his own or with the help of others without substantially harming his well-being, or, in the alternative, his potential for seriously harming himself or others. Dr. Guerra testified *852 that without medication appellant would forget to eat and take care of herself. There was no evidence of specific occasions when this occurred, nor of any occasion on which such lapses of personal care on her part had resulted in substantial harm to her well-being. Dr. Legum testified, as above noted, that from a review of appellant's hospital record, there was no evidence of dehydration or gross malnutrition at the time of her last self-admission. Despite the state's allegation that appellant is unable to care for herself, the evidence supports the opposite conclusion. Appellant has a place to live, financial resources (she receives income of $900.00 per month), insight into her mental illness, knowledge of the necessity for medication, and a history of self-admissions to hospitals. Thus, taking a view of the evidence most favorable to the state, there was evidence that appellant is in need of close supervision and long-term hospitalization, as Dr. Guerra stated, and, that without such treatment she is likely to suffer from neglect, or refuse to care for herself.
The mere conclusion that a person is in need of care or treatment, however, is insufficient. In re Beverly, supra; Neff v. State, 356 So.2d 901 (Fla. 1st DCA 1978). In Beverly, the appellant was mentally ill, had quit his job because of his religious beliefs, had been violent on two occasions, and a psychiatrist had testified that appellant was likely to injure himself or others and was in need of care but could not seek it on his own behalf. The court found this evidence not to be clear and convincing proof that appellant was dangerous to himself and others or that he lacked the capacity to seek help on his own behalf. In Neff, even though appellant was mentally ill and unable to recognize his illness, the order of involuntary commitment was reversed because appellant was a non-dangerous individual capable of taking care of himself and surviving safely in freedom.
The record here is devoid of evidence clearly and convincingly supporting the conclusion that "such neglect or refusal poses a real and present threat of substantial harm to [her] well-being." § 394.467(1)(a)2.a., Florida Statutes (1985). Without such additional proof, the involuntary commitment cannot stand. In re Beverly; Neff v. State, supra. We add further that no attempt has been made to show that there was evidence that appellant might inflict serious bodily harm upon herself or another person.
We recognize that the problem dealt with here is an ongoing one, that conditions change, and indeed, that the state may be obliged to institute further proceedings for the protection of the appellant. However, this knowledge cannot justify our failure to act on the basis of the record as we find it today.
Accordingly, the order for the involuntary hospitalization of appellant is reversed and vacated, and it is ordered that appellant be discharged.
REVERSED.
SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] We wish to commend attorneys for both parties for their well-prepared and presented oral arguments before this court on October 2, 1986, at the court's request, on extremely short notice.