651 So.2d 795 (1995)
Helen Pauline OZBOURN, Appellant,
v.
STATE of Florida, Appellee.
No. 93-1510.
District Court of Appeal of Florida, First District.
March 9, 1995.
*796 Nancy A. Daniels, Public Defender, Lynn A. Williams, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Sonya Roebuck Horbelt, Asst. Atty. Gen., Tallahassee, for appellee.
BENTON, Judge.
Helen Pauline Ozbourn[1] appeals an order which both found her incompetent to stand trial and committed her to the care of the Department of Health and Rehabilitative Services (HRS) for treatment. We do not reach the merits of the portion of the order finding Ms. Ozbourn incompetent to stand trial because, even if it were cognizable, the question of her competency to stand trial is moot, now that the prosecution has concluded. But we reverse the portion of the order which committed her to a treatment facility, despite the fact that she has since been discharged.

Criminal Prosecution
According to the arrest report, Ms. Ozbourn had three Florida identification cards and an Illinois driver's license, each with a different name and date of birth, when she was arrested on November 6, 1992. By information filed on December 17, 1992, she was charged with unauthorized possession of a fictitious driver's license "in violation of Section 322.212, Florida Statutes," and resisting arrest without violence "in violation of Section 843.02, Florida Statutes."
On January 14, 1993, the State filed a motion for a mental examination to determine Ms. Ozbourn's competency to proceed, and, on March 29, 1993, a motion for finding of incompetency and for order of involuntary commitment which the trial court granted, after hearing, over defense objection. In the same order the court found her incompetent to stand trial and committed her "to a treatment facility designated by the Department of Health and Rehabilitative Services."
An order supplementing the record on appeal indicates that appellant was found competent to stand trial three months later. The parties' briefs report that she has since pleaded nolo contendere to the information and been convicted and sentenced to time served (both in jail and as a mental patient). Compare Tal-Mason v. State, 515 So.2d 738 (Fla. 1987) (credit for pretrial involuntary commitment should be allowed against sentence) with Roberts v. State, 622 So.2d 628 (Fla. 1st DCA 1993) (no credit required where pretrial stay in mental hospital was voluntary). No appeal was taken from the judgment of conviction.

Appeal From Incompetency Determination Moot
The notice of appeal which initiated these proceedings was filed before the final judgment of conviction was entered. Cf. Jones v. State, 423 So.2d 520 (Fla. 5th DCA 1982). Insofar as the order that has been appealed was entered under section 916.12(1), Florida Statutes (1991),[2] and adjudicated appellant incompetent to stand trial, it is an interlocutory order, which is not subject to appeal under Florida Rule of Appellate Procedure 9.140(b)(1). Interlocutory orders may, of course, be reviewable on appeal from the final judgments they precede. E.g., Tingle v. State, 536 So.2d 202 (Fla. 1988) (conviction reversed for failure to hold hearing *797 as to defendant's competence to stand trial); Poynter v. State, 443 So.2d 219 (Fla. 4th DCA 1983) (conviction reversed because defendant was erroneously found competent to stand trial). Section 924.06(3), Florida Statutes (1991), provides: "A defendant who pleads guilty or nolo contendere with no express reservation of the right to appeal shall have no right to a direct appeal." Here there has been neither an express reservation nor any appeal of a final judgment. The thirty days allowed by Florida Rule of Appellate Procedure 9.140(b)(2) for appeals of judgments or sentences have, we are informed, by now expired.
Even if aspects of this interlocutory order had been reviewable during the pendency of the prosecution, see State v. Cooks, 642 So.2d 23 (Fla. 5th DCA 1994) (state appeal); Cuervo v. State, 603 So.2d 654 (Fla. 3d DCA 1992); Hall v. Haddock, 573 So.2d 149 (Fla. 1st DCA 1991) (mandamus), the appeal of the decision to declare appellant incompetent to stand trial is now moot. Accordingly, we express no opinion on the sufficiency of the evidence to support the trial court's determination that appellant was incompetent to stand trial.

Appeal From Commitment Order Not Moot
The order on appeal also ordered appellant's involuntary commitment and confinement under section 916.13, Florida Statutes (1991), however. The commitment portion of the order represents a distinct determination and decision closely analogous to an order of commitment under the Baker Act. "[C]hapter 394, Florida Statutes, constitutes a civil/administrative means for involuntary confinement, and chapter 916, Florida Statutes, provides the criminal justice system with a mechanism for involuntary commitment." Gerus v. State, 565 So.2d 1382, 1384 (Fla. 1st DCA 1990).
With respect to this aspect of the order, too, a preliminary issue arises as to mootness. In its motion to dismiss (denied by a separate order of this court), the State argued that the entire appeal was moot. Since appellant has been discharged, her appeal poses the question whether an appeal from an involuntary criminal commitment order under section 916.13, Florida Statutes, becomes moot, when the defendant is released from commitment.[3]
In Godwin v. State, 593 So.2d 211 (Fla. 1992), our supreme court held that an appeal from a civil commitment order under chapter 394 did not become moot by virtue of release from confinement, because section 402.33(8), Florida Statutes (1993), allowed imposition of a lien for the costs of involuntary commitment,[4] even after discharge.
Godwin's appeal is not moot because section 402.33(8) allows for the imposition of a lien for unpaid fees flowing from an involuntary commitment, and HRS has not indicated a waiver of its right to impose a lien.
Godwin, 593 So.2d at 214. Our supreme court explained at some length why the matter was not moot even when no lien had in fact been filed and despite the appellant's poverty:
The imposition of a lien under section 402.33(8) on the property of an involuntarily committed person is a collateral legal consequence. In all probability, a lien will *798 be filed by the Department of Health and Rehabilitative Services (HRS) long after the expiration of the time for filing an appeal from an order of commitment. In fact, the discretion as to whether and when to file the lien rests solely with HRS. Because section 402.33(8) affects a person involuntarily committed beyond the person's initial release, the statute has collateral legal consequences.
Godwin, 593 So.2d at 213. The court made clear that it was concerned with the legal possibility and not the factual probability of a lien:
The State argues that even if section 402.33(8) does provide a collateral legal consequence, Godwin failed to show that the consequences applied to her case. The State notes that section 402.33(2)(g) reads in part: "[f]ees, other than third-party benefits and benefit payments, may not be charged for services provided to indigents whose only sources of income are from state and federal aid."
Further, section 402.33(1)(g) defines "state and federal aid" as "cash assistance o[r] cash equivalent benefits based on an individual's proof of financial need, including, but not limited to, aid to families with dependent children and food stamps." The statutory exceptions are limited to protecting persons whose sole income is from "[s]tate and federal aid." Even if Godwin does not receive state or federal aid she nevertheless may be indigent, and subject to imposition of a lien in the future despite her indigency. The State further argues that section 402.33(6)(a) keeps HRS from collecting fees against Godwin. Section 402.33(6)(a) provides: "[t]he department may not require a client or responsible party to pay fees it may assess that exceed the client's or responsible party's ability to pay." While section 402.33(6)(a) may restrict HRS's ability to collect fees from Godwin, the statute does not rule out the possibility that HRS may attach a lien to Godwin's property in the future. In this case, HRS has been silent as to whether it will file a lien in the future, and, therefore, Godwin still is subject to the possibility of a collateral legal consequence.
Godwin, 593 So.2d at 213-14. Appellant here is equally "subject to the possibility of collateral legal consequence."
Section 402.33, Florida Statutes (1993), applies to "forensic clients" as well as to other committed persons. Fla. Admin. Code R. 10-6.012(1)(a). Giving the statute a definitive gloss, Florida Administrative Code Rule 10-6.012 provides:
10-6.012 Liability for Fees. Liability for fees begins on the first day that services are provided and terminates at the end of the next to the last day that services are provided to the client.
(1) The following shall be liable for the payment of fees for services or reimbursement for the cost of services:
(a) Clients[.]
Florida Administrative Code Rule 10-6.010(2) defines clients, for purposes of the statute and Florida Administrative Code Rule 10-6.012(1)(a) alike, to include "forensic, incompetent, or involuntarily committed persons."

Dangerousness Not Proven
We therefore reach the merits of appellant's claim that, her mental illness notwithstanding, the evidence did not clearly and convincingly show that she met the criteria set out in section 916.13(1), Florida Statutes (1991). Florida Rule of Criminal Procedure 3.212(c) incorporates these statutory criteria by reference. We do not find clear and convincing evidence here of "a substantial likelihood that in the near future [appellant would have] ... inflicted serious bodily harm on h[er]self or another person, as evidenced by recent behavior... ." § 916.13(1), Fla. Stat. (1991). In re Beverly, 342 So.2d 481 (Fla. 1977); Jones v. State, 611 So.2d 577 (Fla. 1st DCA 1992); Braden v. State, 575 So.2d 756 (Fla. 1st DCA 1991); Welk v. State, 542 So.2d 1343 (Fla. 1st DCA 1989); Williams v. State, 522 So.2d 983 (Fla. 1st DCA 1988); Smith v. State, 508 So.2d 1292 (Fla. 1st DCA 1987). We agree with her contention that a "non-dangerous individual, capable of surviving safely in freedom by herself or with the help of others, should never be involuntarily committed." Williams, 522 So.2d at 983.
*799 Accordingly, we reverse the order under review insofar as it involuntarily committed appellant to HRS' custody. Because she has already been released, the effect of our decision is to prevent imposition of a lien for the costs of her involuntary commitment.
MINER and LAWRENCE, JJ., concur.
NOTES
[1] There exists some question whether this is appellant's name or her mother's, but no motion for substitution or to correct the style of the case has been filed.
[2] person is incompetent to stand trial ... if [s]he does not have sufficient present ability to consult with h[er] lawyer with a reasonable degree of rational understanding or if [s]he has no rational, as well as factual, understanding of the proceedings against h[er].
§ 916.12(1), Fla. Stat. (1991).
[3] A person actually "detained by a facility ... may petition for a writ of habeas corpus to question the cause and legality of such detention and request that the circuit court issue a writ for release." § 916.107(9), Fla. Stat. (1993). Since appellant has already been released from detention, however, no petition is authorized to be filed in circuit court.
[4] The court rejected the contention that other consequences of involuntary commitment precluded a finding of mootness:

We recognize that other consequences may follow an involuntary commitment under The Baker Act, such as the stigma that society may attach, as well as some restrictions on a person's privileges and opportunities. See, e.g., § 322.05(5), Fla. Stat. (1989) (restriction on drivers' licenses); § 97.041(3)(a), Fla. Stat. (1989) (restriction on right to vote); § 790.06(10), Fla. Stat. (1989) (restriction on right to carry a concealed weapon). While we recognize these consequences are significant, we hold that they do not rise to the level of collateral legal consequences. Restrictions imposed as the result of a commitment can be or are removed when the patient is discharged or released from active treatment. See § 394.469(4), Fla. Stat. (1989).
Godwin, 593 So.2d at 214.