724 So.2d 1241 (1999)
Mabel LYON, Appellant,
v.
STATE of Florida, Appellee.
No. 98-3287
District Court of Appeal of Florida, First District.
January 27, 1999.
Nancy A. Daniels, Public Defender; P. Douglas Brinkmeyer, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Charlie McCoy, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Mabel Lyon appeals the order involuntarily committing her to the Northeast Florida State Hospital for an initial period of six months. Because the state failed to show by clear and convincing evidence that she met all of the requirements for involuntary commitment, we reverse.
The Reverend Stanley A. Lyon, appellant's husband of forty-nine years, filed a petition for involuntary examination on an ex parte order, which led to her initial detention and evaluation. A subsequent petition for involuntary placement eventuated in a hearing at which he, a psychiatric social worker, and a psychiatrist testified. The psychiatrist testified that Mrs. Lyon suffers from schizophrenia, paranoid type. Mr. Lyon testified that her condition was
[l]ike it's been through the years. Once she stops taking her medicine she gets real bad, real disruptive, calls a lot of people on the telephone, tells them how terrible I am.... Turns off the air conditioner because she thinks the man that put it in put something in it electronically that is working against her.
Covers up the little light on the telephone because she thinks it's watching her. She talks about my pager and she thinks the pager is keeping track of her. If she sees a police car on the street, she thinks the police car is watching her and that I have notified them. Just general things that goes on with her.
Apparently crediting Dr. Thomas Wikstrom's expert psychiatric testimony and testimony about Mrs. Lyon's erratic behavior, the trial court determined that Mrs. Lyon's mental illness was proven clearly and convincingly. Appellant does not challenge that determination. But mental illness is only one of several criteria that clear and convincing evidence must establish.
Here the state does not contend that Mrs. Lyon posed a danger or threat to others, nor was there evidence of any recent behavior that would support a finding that in the near future she would inflict serious harm either on herself or others. Section 394.467(1), Florida Statutes (1997), places on the state the burden to prove by clear and convincing evidence that:
(a) He or she is mentally ill and because of his or her mental illness:
1.a. He or she has refused voluntary placement for treatment after sufficient and conscientious explanation and disclosure *1242 of the purpose of placement for treatment; or
b. He or she is unable to determine for himself or herself whether placement is necessary; and
2.a.He or she is manifestly incapable of surviving alone or with the help of willing and responsible family or friends, including available alternative services, and, without treatment, is likely to suffer from neglect or refuse to care for himself or herself, and such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; or
b. There is substantial likelihood that in the near future he or she will inflict serious bodily harm on himself or herself or another person, as evidenced by recent behavior causing, attempting, or threatening such harm; and
(b) All available less restrictive treatment alternatives which would offer an opportunity for improvement of his or her condition have been judged to be inappropriate.
Id. (emphasis added). The state sought to meet its statutory burden by showing that Mrs. Lyon was likely to suffer from neglect or refusal to care for herself, and that such neglect or refusal posed a real and present threat of substantial harm to her well-being.
At the hearing, Dr. Wikstrom testified that Mrs. Lyon was currently able to take care of herself, because she was taking her medication. When asked if his wife was able to take care of herself, Mr. Lyon testified:
Well, basically, I guess she would say she is. She does take a shower once in a while. She has been able to eat some. I never see her eat too much. But I know she gets something to eat. I've done the dishes most of the time and found a few dishes in the sink that were dirty. She doesn't eat too much I don't think. For a long time we were going out to eat once a day. But it got so bad I didn't want to take her in public.[1]
Dr. Wikstrom's opinion was that, if Ms. Lyon did not take her medication,[2] "she w[ould] be almost incoherent in her speech, not able to take care of herself, she'll require supervision, she'll require structure." The social worker's testimony added nothing significant on this point.
Our decision in Salter v. State, 618 So.2d 352 (Fla. 1st DCA 1993), controls the present case. In Salter, the state relied on the testimony of one Dr. DeMoya to prove self neglect posed "a real and present threat of substantial harm." § 394.467(1), Fla. Stat. (1993).
Dr. DeMoya testified that appellant was in danger of self-neglect or some violent act and needed to be involuntarily placed for further care and supervision because she is unable to make good decisions about her well-being, but he did not state the nature of the self-neglect that appellant would sustain if not committed. Cf. Welk v. State, 542 So.2d 1343 (Fla. 1st DCA 1989); Schexnayder v. State, 495 So.2d 850 (Fla. 1st DCA 1986). The record does not support, by clear and convincing evidence, the conclusion that appellant met the third criterion necessary for involuntary placement.
Salter, 618 So.2d at 353. Similarly, Dr. Wikstrom's testimony amounts to an opinion that Mrs. Lyon would, if not on medication, neglect *1243 herself. But the doctor did not specify the nature of the self neglect he anticipated in a way that established any real and present threat of substantial harm to her well-being.
We decline the state's surprising invitation to conclude that the trial court had "the duty to assign credence to the evidence; perhaps credence beyond its literal import." Due process and the statute alike require clear and convincing proof. See In re Beverly, 342 So.2d 481, 488 (Fla.1977).
A "non-dangerous individual, capable of surviving safely in freedom by herself or with the help of others, should never be involuntarily committed." Williams v. State, 522 So.2d 983, 984 (Fla. 1st DCA 1988). "[A]need for treatment and medication does not in itself justify a Baker Act commitment." Adams v. State, 713 So.2d 1063, 1063 (Fla. 1st DCA 1998). See also In re Beverly, 342 So.2d at 481; Archer v. State, 681 So.2d 296 (Fla. 1st DCA 1996); Jones v. State, 611 So.2d 577 (Fla. 1st DCA 1992); Braden v. State, 575 So.2d 756 (Fla. 1st DCA 1991); Welk v. State, 542 So.2d 1343 (Fla. 1st DCA 1989); Williams v. State, 522 So.2d at 983; Smith v. State, 508 So.2d 1292 (Fla. 1st DCA 1987); Neff v. State, 356 So.2d 901 (Fla. 1st DCA 1978).
Reversed.
BENTON, VAN NORTWICK, and PADOVANO, JJ., CONCUR.
NOTES
[1] Mr. Lyon explained further:

As soon as I get her in the car she puts the windows down and starts ranting at me about different things that I have done and I'm responsible for it. I just can't take it. So I just take her home. I don't hardly take her out.
....
... she just tells me she's going to leave, she's going to get a divorce and that she shouldn't have married me in the first place. She went to the bank and took out $2,500.00 unbeknownst to me and gave it to a lawyer for a divorce.
[2] The trial court found that Mrs. Lyon was refusing all medications before her commitment. Mr. Lyon testified:

I felt that if she goes to MacClenny for a time where she could get on the medication long enough to feel she's not having all these side effects she thinks she's having maybe that will be an answer for her. I don't know. I can't make her take the medicine. She does get worse and worse. Being a clergyman she calls so many people in the church and tells them all kinds of things. I have talked with those people and they all understood how she was and so they care for her. We all care for her. They know she needs help. They told me they would be glad to be a witness if I ever needed them to. But she needs help and they have all tried to encourage her to take her medicine but she tells everybody she doesn't need it, that I need it.