PER CURIAM.
The appellant was involuntarily committed pursuant to section 394.467, Florida Statutes (2001). She concedes that certain of the statutory criteria for involuntary commitment apply to her, but she argues that the State failed to present clear and convincing evidence to satisfy the criteria of section 394.467(l)(a)2 that (i) she is manifestly incapable of surviving alone or with the help of others, and without treatment, is likely to suffer from neglect which poses a real and present threat of substantial harm to her well-being, or (ii) there is a substantial likelihood that in the near *317 future she will inflict serious bodily harm on herself or another person. As discussed below, we agree that the State failed to carry its evidentiary burden.
I.
With regard to the appellant suffering from neglect if her involuntary commitment was discontinued, the thrust of the witnesses’ testimony was a concern for her refusal to accept the full level of treatment offered to her. In addition, the witnesses doubted that the appellant would take the medication prescribed for her if she was discharged. However, a refusal to take medication does not in itself justify involuntary commitment. Boller v. State, 775 So.2d 408, 409 (Fla. 1st DCA 2000) (“It is well-settled that the need for treatment and medication and the refusal to take psychotropic medication despite a deteriorating mental condition, standing alone, do not justify involuntary commitment under the Baker Act.”); Lyon v. State, 724 So.2d 1241, 1243 (Fla. 1st DCA 1999)(holding an expert psychiatrist’s testimony that a patient would neglect herself if she was not on medication, without specifying the nature of the self-neglect in a manner that establishes any real and present threat of substantial harm to her well-being, could not support involuntary commitment).
II.
During the commitment proceedings, the State presented witnesses who described the appellant as being argumentative and having a tendency to provoke others. However, the appellant’s treating physician did not consider her to be suicidal, and none of the witnesses could recall any instances in which the appellant was involved in a physical confrontation. Overall, the testimony demonstrated nothing more than a speculative belief among the witnesses that the appellant, if released, would cause others to harm her. However, that testimony was insufficient to demonstrate a substantial likelihood that in the near future the appellant would inflict serious bodily harm on herself or another. In similar cases, this court has held such allegations to be insufficient to justify involuntary commitment. For example, in Blue v. State, 764 So.2d 697, 698 (Fla. 1st DCA 2000), the appellant’s psychiatrist testified that she was generally argumentative and that her interactions with other patients tended to escalate into conflicts. The court stated, “[wjithout specificity, the evidence is not clear and convincing that there is a substantial likelihood that in the near future Appellant will inflict serious bodily harm on herself or another person.” Id. at 698. See also Boiler, 775 So.2d at 410 (noting the record lacked clear and convincing evidence of a substantial likelihood that the appellant would inflict serious bodily harm on herself or another in the near future).
III.
Accordingly, the involuntary commitment order is reversed and the case is remanded for the trial court to elicit further testimony to establish the required statutory criteria or otherwise order the appellant discharged if she is still involuntarily committed. See Zumalt v. State, 791 So.2d 592 (Fla. 1st DCA 2001)(revers-ing and remanding for the trial court to elicit further testimony to satisfy the statutory criteria, or otherwise order the appellant discharged).
Reversed and Remanded.
BARFIELD, VAN NORTWICK and POLSTON, JJ., concur.