DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KAREN ROSS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D22-2949

[August 30, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles E. Burton, Judge; L.T. Case No. 50-2022-MH-002985-XXXX-SB.

Carey Haughwout, Public Defender, and Narine N. Austin, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jacqueline I. Kurland, Senior Assistant Attorney General, Fort Lauderdale, for appellee.

FORST, J.

Appellant Karen Ross appeals the trial court's order granting South County Mental Health Center's ("the Center") petition for involuntary inpatient placement at the Center. Ross contends that the State failed to establish by clear and convincing evidence the criteria set forth in section 394.467(1), Florida Statutes (2022) (part of "The Florida Mental Health Act," a/k/a "The Baker Act"[1]) to support her involuntary inpatient placement. We agree and reverse the order of commitment.

**Background**

Ross's mother, with whom Ross resided, became concerned about "peculiar" behavior that Ross reportedly exhibited at home. Consequently, Ross was taken to the Center for "involuntary examination" pursuant to section 394.463, Florida Statutes (2022). There, a psychiatrist examined her. Based on this doctor's examination of Ross and his communications with Ross's family, the Center petitioned for section 394.467 involuntary

---

[1] § 394.451, Fla. Stat. (2022).

inpatient placement.  Ross challenged this petition, and a magistrate judge conducted a hearing.

At the hearing, the psychiatrist testified:

> So the family was concerned because of several peculiar behaviors.  For example -- and that's in the Court-ordered Baker Act -- the patient was found eating dog food, and you know, when the mother tried to confront her and put it back, she was also found had stashed it away.  She'd probably been sleeping in a chair for several years because she was too paranoid to sleep in a bed.  Pulls her hair out, hits herself in the face, and when she's too upset doesn't come home at night and sleeps in the storage room.  She's also been reported urinating in cups and jars, which she saves up. . . .  And doesn't shower, she doesn't eat properly and hoards garbage at home, and claims to be employed, but hasn't had a job.  And you know, seems to be able to -- as soon as she gets released from the hospital she seems to be able to get off of her medication, and you know, get off the radar for a little bit until the situation exacerbates and she gets re-Baker acted in the hospital.

The psychiatrist diagnosed Ross as suffering from schizophrenia, and he opined that Ross was incapable of making her own decision regarding continued treatment at the Center.  However, the doctor agreed that Ross did not appear malnourished.  He did not identify any obvious signs that Ross's behavior impacted her health.  In addition, the psychiatrist testified that Ross's family members had no physical health concerns regarding Ross's behavior.  When asked about his concerns if Ross was discharged, he responded that "the bizarre behavior will simply continue, the parents would likely file again, and then find theirself [sic] in the same situation shortly."

Ross denied that she consumed dog food or lived in a storage unit.  She further claimed to have a job.  Her counsel argued that the petition should be dismissed because there was insufficient evidence of self-harm or self-neglect.

The trial court ultimately granted the petition, ordering Ross's involuntary placement at the Center for up to three weeks.  The order found that Ross was "mentally ill" and consequentially she was "manifestly incapable of surviving alone or with the help of willing and responsible family or friends, including available alternative services, and, without treatment, [was] likely to suffer from neglect or refuse to care for herself,

and such neglect or refusal pose[d] a real and present threat of substantial harm to her well-being." This finding serves as the basis for Ross's appeal.

## Analysis

Ross argues on appeal that the State failed to prove:

> 2.a.    [S]he is incapable of surviving alone or with the help of willing and responsible family or friends, including available alternative services, and, without treatment, is likely to suffer from neglect or refuse to care for . . . herself, and *such neglect or refusal poses a real and present threat of substantial harm to . . . her well-being*; or
>
> b. There is a substantial likelihood that in the near future . . . she will inflict serious bodily harm on self or others, as evidenced by recent behavior causing, attempting or threatening such harm . . . .

§ 394.467(1)(a)2., Fla. Stat. (2022) (emphasis added).

The State has not argued, and the trial court did not find, that Ross was at risk of "inflict[ing] serious bodily harm on self or others." Thus, our review is limited to whether Ross "[was] incapable of surviving alone or with the help of willing and responsible family or friends, including available alternative services, and, without treatment, [was] likely to suffer from neglect or refuse to care for . . . herself, and such neglect or refusal pose[d] a real and present *threat of substantial harm to . . . her well-being.*" § 394.467(1)(a)2.a., Fla. Stat. (emphasis added).

Ross's schizophrenia diagnosis and potential failure to take medication for her mental illness do not alone justify Baker Act involuntary placement. *See Boller v. State*, 775 So. 2d 408, 409 (Fla. 1st DCA 2000) ("It is well-settled that the need for treatment and medication and the refusal to take psychotropic medication despite a deteriorating mental condition, standing alone, do not justify involuntary commitment under the Baker Act.").

Moreover, the psychiatrist failed to identify any obvious signs Ross's behavior affected her health and confirmed that Ross's family members had no physical health concerns based on her behavior. Despite concern by Ross's mother that Ross consumed dog food, the psychiatrist confirmed Ross did not appear malnourished. *See Schexnayder v. State*, 495 So. 2d 850, 852 (Fla. 1st DCA 1986) (reversing involuntary hospitalization when

3

doctor testified there was "no evidence of dehydration or gross malnutrition").

Similarly, the psychiatrist's response that if Ross was released, her "bizarre" behavior would "simply continue" and posed a real and present threat of substantial harm to her well-being, was "speculative and conclusory." *See Kogel v. State*, 339 So. 3d 373, 374–75 (Fla. 4th DCA 2022); *see also Lyon v. State*, 724 So. 2d 1241, 1243 (Fla. 1st DCA 1999). "Importantly, '[c]onclusory testimony, unsubstantiated by facts in evidence . . . is insufficient to satisfy the statutory criteria by the clear and convincing evidence standard.'" *Kogel*, 339 So. 3d at 375 (alterations in original) (quoting *Bess v. State*, 336 So. 3d 36, 37–38 (Fla. 4th DCA 2022)).

Accordingly, the trial court erred in finding clear and convincing evidence of self-neglect posing a real and present threat of *substantial harm* to Ross's well-being under section 394.467(1)(a)2.a.

### Conclusion

Because the psychiatrist's testimony was conclusory and unsubstantiated by the facts in evidence, the State has failed to establish by clear and convincing evidence the required involuntary inpatient placement criteria. Consequently, we reverse the trial court's order of commitment.

*Reversed.*

KLINGENSMITH, C.J., and CONNER, J., concur.

\*   \*   \*

***Not final until disposition of timely filed motion for rehearing.***